Daniel Cohen AT4058
CALIFORNIA INSTITUTION FOR MEN
PO BOX 600
CHINO,CA 91708-0600

FILED
CLERK, U.S. DISTRICT COURT

MAY 1 3 2015

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

1

2

3  Daniel Cohen (plaintiff)        )
                                   )
4        v.                        )   CIVIL ACTION NO.
              (defendants)         )   CV15-3576 RSWL AGR
5  Los Angeles County et.al. , Los Angeles Cou)
   nty Sheriffs Department, Los Angeles County )
6  Medical Services Bureau, Lee Baca, Terri McDon)   COMPLAINT AND DEMAND FOR
   ald, David Fender, Kelley Fraser, Ray Leyva, )         JURY TRIAL
7  Ralph Ornelas, Karen Dalton, Kevin Kuykendall)
   , Paul Tanaka, Officer Ortiz, Officer Shah, )    TITLE  42 U.S.C.§1983
8  Nurse Practicioner Malone, Does 1-101,       )

9  I. JURISDICTION & VENUE

10  1. Plaintiff alleges, This civil action is authorized by title 42 U.S.C.§1983

11  to redress the deprivation under color of state law, of rights secured by the

12  constitution of the united states, This court has jurisdiction under 28 U.S.C.

13  §1331 and §1343 (a)(3) plaintiff seeks seeks declatory relief pursuant to 28

14  U.S.C. §2201 and §2202, plaintiffs claims for injunctive relief are authorized

15  by 28 U.S.C. §2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure,

16  plaintiff also submits state law claims under 28 U.S.C.§1367(a) for actions tha

17  have arisen for the same circumstances or events as the constituion violations,

18  2. The CENTRAL DISTRICT OF CALIFORNIA is an appropiate venue under 28 U.S.C.§

19  1391(b)(2) because it is where the events giving rise to this claim occured.

20  II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

21  3. On or about 05/20/13 plaintiff filed three (3) Los Angeles County Jail forms

22  for grievance and never received any reply. On or about 10/17/14 plaintiff was

23  able to file three (3) Los Angeles County claim forms for damages, On or about

24  01/06/15 plaintiff submitted three (3) amended claims and attached application

25  for leave to submit a late claim, On or about 11/14/14 plaintiffs claims were

26  denied and on or about 2/13/15 plaintiff received notice that plaintiff had

27  until 05/14/15 to file legal action in court, on or about 03/15/15 plaintiff

28  submitted notice of hearing and petition for relief from claims prcedure,

4. plaintiff has a hearing date of 06/25/15 and asks the court to allow this complaint to be submitted prior to the deadline of 05/14/15 and consider the plaintiffs administrative remedies fully exhausted.

5. plaintiff has been diligent in his efforts to exhaust his remedies prior to brining this action in court. plaintiff has good standing for relief of the claim requirement. plaintiff anticipates to be fully relieved on 06/25/15.

III.   PARTIES

6. plaintiff , Daniel Cohen, is and was at all times mentioned herein a prisoner of Los Angeles County Jail and California Department of Corrections and Rehabilitation. He is currently confined in CALIFORNIA INSTITUTION FOR MEN in the city of CHINO, CALIFORNIA.

7. defendant Los Angeles County et.al. is a municipality that employs final policy makers for Los Angeles County Sheriff's Dept. , Los Angeles County Medical Services Bureau , Los Angeles County Jail and is sued in their official and individual capacity.

8. defendant Lee Baca is and was at all times mentioned herein the sheriff of Los Angeles County Sheriff's Dept. and a policy maker for Los Angeles County Jail, and is sued in their official and individual capacity.

9. defendant Terri McDonald is and was at all times mentioned herein the assistant sheriff for the custody operations and a policy maker for Los Angeles County Jail, and is sued in their official and individual capacity.

10. defendant David L. fender is and was at all times mentioned herein a chief of Los Angeles County  Sheriff's Dept. and Medical Services Bureau, and is sued in their official and individual capacity.

11. defendant Kelley S. Fraser is and was at all times mentioned herein a commander of Los Angeles County Sheriff's Dept. and Medical Services Bureau, and is sued in their official and individual capacity.

12. defendant Ray Leyva is and was at all times mentioned herein a commander for Los Angeles County Sheriff's Dept. and Medical Services Bureau, and is sued in their official and individual capacity.

13. defendant Ralph G. Ornelas is and was at all times mentioned herein a comm ander of Los Angeles County Sheriff's Dept. and Medical Services Bureau, and is sued in their official and individual capacity.

14. defendant Karen S. Dalton is and was at all times mentioned herein a Assis tant Division Director for Los Angeles County Sheriff's Dept. and Medical Serv icies Bureau, and is sued in their official and individual capacity.

15. defendant Kevin R. Kuykendall is and was at all times mentioned herein a captain for Los Angeles County Sheriff's Dept. and Medical Services Bureau, and is sued in their official and individual capacity.

16. defendant Paul Tanaka is and was at all times mentioned herein the under sheriff for Los Angeles County Sheriff's Dept. , and is sued in their official and individual capacity.

17. defendant Officer Ortiz is and was at all times mentioned herein a deputy for Los Angeles County Sheriff's Dept. , and is sued in their individual capa city.

18. defendant Officer Shah is and was at all times mentioned herein a deputy for Los Angeles County Sheriff's Dept. , and is sued in their individual capa city.

19. defendant Nurse Practictioner Malone is and was at all times mentioned herein a Nurse Practicioner for Los Angeles County Medical Services Bureau and is sued in their individual capacity.

20. Defendants Doe 1-101 is and was at all times mentioned herein , some perso ns whom plaintiff is ignorant of their names, titles, and positions, however, upon belief and information are associated and included in this action. and are somehow liable or responsible for the events and circumstances alleged herein,

21. plaintiff will amend this complaint at a later time to include the true names and title, and positions of Defendant Does 1-101.

22. At all times mentioned herein all defendants acted while under the color of state law

IV.   FACTS

23.   On or about 01/28/13 plaintiff was arrested by Los Angeles County Sheriff's Dept.

24. when plaintiff was taken into custody, plaintiff was denied access to his glasses and contact lenses.

24. Without corrective lenses plaintiff is legally blind.

25. On or about 02/01/13 plaintiff was transferred to Los Angeles County Jail, TTCF 450 Bauchet st. Los Angeles,CA 90012.

26. upon arrival plaintiff was processed through the inmate reception center (IRC)

27. during the intake process plaintiff was medically evaluated by Doctor Doe 1.

28. during consultation with Doctor Doe 1 plaintiff explained that he was extremely nearsighted and was without glasses, and told Doctor Doe 1 "I am vision impaired".

29. plaintiff then asked Doctor Doe 1 for his assistance with plaintiff's vision impair ment , plaintiff said "can you help me get glasses" and "I will need some help to see".

30. Doctor Doe 1 replied "there is nothing we can do for you" and "your friends or fam ily must provide glasses for you".

31. plaintiff replied "I have no friends or family to assist me, so those options will not work for me".

32. plaintiff then explained to Doctor Doe 1 that he was unable to walk around and nav igate on his own safely, plaintiff said "I can't even walk around on my own safely".

33. plaintiff tried to get  Doctor Doe 1 to recognize the seriousness of plaintiff's disability, plaintiff said "I feel unsafe here not being able to see".

34. Doctor Doe 1 ended the consultation by saying "I have other inmates to see, im sor ry, but I cannot help you".

35. at the end of plaintiff's medical evaluation and consultation with Doctor Doe 1 no action was taken and no assistance was provided to plaintiff for his vision impairment disability, although several methods of assistance were available.

36. begining on or about 02/02/13 through 02/12/13 plaintiff suffered several injuries such as scrapes, scratches, and bruises due to contantly falling down, tripping and running into obsticales that plaintiff could not clearly see in his enviroment.

37. on or about 02/08/13 plaintiff was transferred to Los Angeles County Jail NCCF 29300 The Old Road , Castaic, CA 91384.

38. upon belief and information, Los Angeles County Jail NCCF is a jail facility that is designated for general population inmates, and medical and disability services are unavailable or extremely limited at this facility.

39. on or about 02/12/13 plaintiff was living in a dorm within the 700 area of the building known as supermax, when a fight began in plaintiff's dorm.

40. approximately ten (10) Los Angeles County Sheriff's department officers responded to the fighting, then intervened and removed those inmate involved in fighting.

41. the responding officers then removed all of the remaining inmates from the dorm and transferred the inmates to another room to perform a group strip search.

42. plaintiff was the very last inmate to approach the dorms entrance/exit door because the plaintiffs vision was impaired, therefore plaintiff was forced to move slowly and cautiously while walking alone.

43. upon exiting the dorm area the plaintiff was immediately bombarded by multiple shouting officers saying "hey hurry the fuck up" and "lets go, lets go move it".

44. plaintiff was then taken by his arms by two officers and shoved into a large room with all the other inmates.

45. the leading officer of the strip search began to speak and ordered all the inmates to remove their clothing.

46. plaintiff then began to remove his clothing and strip down naked.

47. the leading officer began to give instructions, some of the instructions were not clearly understood by the plaintiff because the leading officer used several hand gestures and visual ques that the plaintiff was unable to see, he used terms such as "do this with your hands" and "go like this with your uniform" which were too vage.

48. plaintiff continued to perform the instructions to the best of his ability, altho ugh plaintiff was confused as to what to do.

49. then officer ortiz approached plaintiff and singled him out for moving incorrectl y and slowly. Officer Ortiz began to shout at plaintiff "move faster" plaintiff then replied "im trying"

50. Officer Ortiz then walked away from plaintiff and began to shout at other inmates

51. approximately one to two minutes later Officer Ortiz returns to plaintiff and see 's plaintiff is still falling behind the other inmates. Officer Ortiz then says "hey I told you to hurry the fuck up" .

52. Officer Ortiz then takes plaintiffs left arm and twists it up behind plaintiffs back causing pain in plaintiffs left shoulder.

53. officer Ortiz then pushes plaintiff towards the door and tells the other officers "this one is not cooperating" and plaintiff is pushed into the hallway area.

54. Officer Ortiz then handcuffed plaintiff and forced plaintiff to sit on the ground

55. plaintiff then tried to explain to officer ortiz that he coult not see see proper ly, plaintiff said "I am legally blind" and "I need glasses" and "Im sorry I was tryi ng to do the best I can".

56. Officer Ortiz upon belief and information thought plaintiff was lieing and refuse d to believe plaintiff, Officer Ortiz then became loud and angery and said "do you think im stupid" and "you want to fuck with me" and "your going to the hole" and "we will see how tough you are then" plaintiff tried to object but was told "shut up"

57. plaintiff was then transferred into the custody of officer Doe 2 and Doe 3 .

6

58. officers Doe 2 and Doe 3 then removed the handcuffs from plaintiff and told plaintiff "Don't move or we will take you out"

59. plaintiff was given a blue inmate uniform and told to get dressed.

60. plaintiff tried to explain to officers Doe 2 and Doe 3 that this was all a big mistake and that plaintiff didn't intend to do anything wrong. plaintiff said "I am legally blind,I cant see well" and "I didnt understand the lead officer" and "please listen to me".

61. officers Doe 2 and Doe 3 told the plaintiff "shut up" and "be quiet" and "we dont give a shit" and "your going to the hole cuz ortiz said so".

62. upon belief and information officer ortiz had told officers doe 2 and doe 3 to take the plaintiff to the hole and intended to place plaintiff with a agressive inmate who is known for violence, to teach plaintiff a lesson.

63. Officers Doe 2 and Doe 3 then placed plaintiff into a large holding room with approximately three or four other inmates waiting to be taken to the discplinary area of the jail.

64. Approximately thiry mionutes later Officers Doe 4 and Doe 5 then arrived and escorted plaintiff and additional inmates to the disciplinary area of supermax this area is known as 900 max.

65. while being escorted plaintiff made several attempts to explain to officers doe 4 and doe 5 that this was a mistake and disciplinary action is unjustified.

66. plaintiff was told "shut up" several times and "no talking" several times.

67. plaintiff continued to try to explain, plaintiff said "I need to talk to you , I am legally blind" and "this is a mistake".

68. Officers doe 4 and doe 5 refused to listen, and ignored or avoided the state ments of the plaintiff regarding plaintiffs vision impairment disability. upon belief and information officers doe 4 and doe 5 had been instructed to ignore the plaintiff because he was lieing about his vision impairment and plaintiff was to be taken to the hole no matter what he said and placed with a violent and

1  dangerous inmate so plaintiff could be taught a lesson.

2  69. upon arrival at the disciplinary area 900 max , plaintiff was transferred into

3  the custody of Officers Doe 6 and Doe 7.

4  70. plaintiff was told to remove his blue inmate uniform and put on a blue and ora

5  nge uniform by officers doe 6 and doe 7.

6  71. while plaintiff was getting changed plaintiff overheard officers doe 4 and doe5

7  laughing and saying "I can't see, I can't see, I'm blind, hahaha" and "what an idi

8  ot, ortiz called it so oh well".

9  72.plaintiff then tried to explain to officers doe 6 and doe 7 that plaintiff was

10  vision impaired, plaintiff said "I can't see,im legally blind".

11  73. plaintiff was ignored and escorted up a set of stairs and to a cell door.

12  74. plaintiff then tried again to explain his vision impairment to officers doe 6

13  and doe 7, plaintiff said "wait I can't see properly" , one officer then said

14  " shut up and get inside the sell" then plaintiff entered the cell.

15  75. officers doe 6 and doe 7 would not listen to plaintiff, and intentionally igno

16  red or avoided plaintiff's statements regarding his vision impairment.

17  76. On or about 02/14/13 plaintiff was attacked by the inmate in his cell.

18  77. plaintiff was struck several times in the face and eyes, plaintiff then called

19  for help. "help,help".

20  78. Officers doe 8 and doe 9 responded to plaintiffs cell, then stood outside the

21  cell with the door closed and hesitated to open the door.

22  79. plaintiff was then struck several more times in the eyes and face and head

23  while officers doe 8 and doe 9 watched and listened to plaintiff call for help.

24  80. plaintiff could hear officers doe 8 and doe 9 laughing at plaintiff being beat

25  en , plaintiff heard officers doe 8 and doe 9 say "ouch, thats gotta hurt" , "yup"

26  81. after approximately 10 minutes officers doe 8 and doe 9 opened the cell door

27  and intervened in the attack upon plaintiff.

28  82. plaintiff was then taken to medical and treated by nurse doe 10 for swelling

83. plaintiff was returned to the disciplinary unit and placed in the hole alone.

84. on or about 02/21/13 plaintiff was transferred to Los Angeles County Jail MCJ 441 Bauchet st. Los Angeles, CA 90012

85. on or about 03/1/13 plaintiff was selected to be released without treatment or services for injuries that were undiagnosed and without viaual aids or assistance devices, for persons with vision impairments, although several methods of treatment or services were available and several equiptment options were available

86. upon release plaintiff was instructed to report to a work release location and perform labor activities for approximately 14 days.

87. plaintiff was often lost and was unable to navigate by himself through streets

88. plaintiff was able to get help from a stranger who gave him a ride to whittier

89. plaintiff reported to the work release location late and was scolded by the work relese instructor.

90. plaintiff reported to work release duty for approximately 4 days and slept on the streets nearby in between because he was afraid to go too far away .

91. on or about the 5th day plaintiff was lost and unable to report to work release

92. plaintiff contacted the phone number for work release and explained he was lost and had a vision impairment and was unable to report for duty.

93. plaintiff was arrested on or about 03/15/13 for not reporting to work release

94. plaintiff was release again on or about 04/01/13 without any aids or assistance

95. for approximately 30 days plaintiff was unable to function or perform several basic tasks and stayed with people or on the streets often lost and helpless.

96. On or about 05/12/13 plaintiff was taken into custody by west covina police for stealing money to buy glasses.

97. on about 05/13/13 plaintiff was transferred to Los Angeles County Jail, TTCF 450 Bauchet St. Los Angeles , CA 90012.

98. upon arrival plaintiff was processed through the inmate reception center (IRC)

99. during the intake process plaintiff was medically evaluated by Doctor Doe 12

100. during consultation with Doctor Doe 12 plaintiff explained that he was very near sighted  and vision impaired , plaintiff said "Im legally blind".

101. plaintiff then asked Doctor Doe 12 for his assistance with his vision impairment, plaintiff said " can you help me get glasses or something?" and "I cant see"

102. Doctor Doe 12 replied "No there is nothing we can do for you" and "your friends and family must provide glasses for you".

103. plaintiff then made it clear that those options would not work for plaintiff because plaintiff had no friends or family who could assist plaintiff to get glasses.

104. plaintiff explained that he was unable to safely navigate or walk around alone.

105. Doctor Doe 12 then ended the consultation by telling plaintiff " go wait in the main area".

106. at the end of plaintiffs medical evaluation and consultation with Doctor Doe 12 no action was taken and no assistance was provided to plaintiff for his vision impairment disability, although several methods of assistance were available.

107. on or about 05/14/13 plaintiff was transferred to Los Angeles County Jail NCCF 29300 The Old Road , Castaic , CA 91384.

108. on or about 05/20/13 plaintiff was having difficulty functioning within his enviroment, and difficulty with his basic daily needs and required help from other inmates.

109. plaintiff then began seeking alternative methods to obtain glasses or be moved to a safer living area.

110. plaintiff then filled out approximately 3 Los Angeles County Jail request and grievance forms.

111. the first form was a request to see a doctor to discuss plaintiffs vision impairment and discuss possible care,treatment, and services or equiptment options to assist plaintiff

112. the second form was a request to meet with a Jewish chaplain to discuss the possibility of getting their assistance to obtain glasses from the outside.

113. the third form was a request to be moved to a school dorm, which is a safer non-violent enviroment with helpful educators , instructors and inmates.

114. on or about 05/20/13 plaintiff placed all three forms in the request/grievance box in dorm 726. Supermax

115. on or about 06/08/13 plaintiff was taken to the nurses officer located near dorm 726. Supermax

116. Nurse Doe 13 then evaluated plaintiff for vision impairment and asked plaint iff to read the letters on an eye chart.

117. plaintiff was not able to read any letters on the eye chart with neither eye

118. Nurse Doe 13 then told plaintiff "you should be in a vision impaired dorm"

119. plaintiff then asked nurse doe 13 "how do I get placed into a vision impaire d dorm?".

120. Nurse Doe 13 said " I will refer you to see the Doctor, then you will be mov ed automatically"

121. Nurse Doe 13 then placed plaintiff on Doctors line to be seen at a later time

122. on or about 06/13/13 plaintiff was taken to the infirmary of Supermax to see the general Doctor.

123. plaintiff was then medically evaluated by Doctor Doe 14.

124. plaintiff then explained to Doctor Doe 14 that he was vision impaired and and told Doctor Doe 14 about his safety concerns due to his disability. plaintiff said , "I am very nearsighted and I dont feel very safe living in my dorm like this"

125. plaintiff then asked Doctor Doe 14 for their assistance, plaintiff said " can you help me get glasses?" and "can you move me to a vision impaired dorm?".

126. Doctor Doe 14 then gave plaintiff a eye chart exam and asked plaintiff to re ad the letters on the chart.

127. plaintiff told Doctor Doe 14 that he could not see any letters in either eye

11

128. Doctor Doe 14 then asked plaintiff to return to the waiting area.

129. at the end of plaintiffs medical exam with Doctor Doe 14 plaintiff was not moved to a dorm for persons with vision impairments.

130. Doctor Doe 14 did refer plaintiff to be seen by the on-site opthomologist at a later date.

131. Doctor Doe 14 did forward the safety concerns of plaintiff to the officer on duty at the control booth of the 726 housing area.

132. on the way back to his dorm plaintiff became lost and ended up near the education area where plaintiff had attened a computer education class previously on or about 12/01/12 through 12/26/12 with mr.Johansen.

133. plaintiff took this opportunity to speak with Mr.Johansen in person and asked Mr.Johansen if there was any way he can help plaintiff get back in the MERIT program and also if there is any way the MERIT program can help plaintiff get glasses.

134. Mr. Johansen said "I will see what I can do" and "we will help you get glasses"

135. Mr. Johansen also gave plaintiff directions back to his living area dorm 726

136. once plaintiff arrived at the 726 housing area plaintiff was approached by custody assistant Doe 15 who said "come here I need to talk to you" "in here"

137. Custody Assistant Doe 15 then brought plaintiff into a large empty room.

138. Custody Assistant Doe 15 asked plaintiff "what are your safety concerns?"

139. plaintiff then explained that he was vision impaired and explained that he was having a hard time living in dorm 726 , plaintiff said "I am legally blind" and "I dont feel very safe living in 726" and "I am having a hard time in there"

140. plaintiff also asked Custody Assistant Doe 15 to move him to another dorm, plaintiff said "can you move me to a vision impaired dorm?" and "can you move me to a safer dorm?".

141. Custody Assistant Doe 15 told plaintiff "I cant move you anywhere" and "your dorm is a good dorm" and "everything will be fine in your dorm".

142. Custody Assistant Doe 15 then escorted plaintiff to the enterance to dorm 726

143. plaintiff then retured to his dorm 726.

144. on or about 06/15/13 a race riot began in dorm 726 between whites and hispanics.

145. several hispanic inmates began to attack white inmates at random.

146. plaintiff was not aware of what was happening around him because plaintiff could not distinguish whites and hispanics, plaintiff assumed inmates were fighting other inmates over gang fueds or debts.

147. Los Angeles County Sheriff's Dept. Officers  Doe 16 through Doe 26 responded to the rioting in dorm 726.

148. upon arrival to dorm 726 officers doe 16-26 hesitated to enter and began shouting through the gate aka bars.

149. officers doe 16 - 26 shouted "lay down" and "lay down on the ground now".

150. plaintiff then layed down on the ground, facedown, head to one side.

151. several inmates were still fighting when plaintiff layed down on the ground.

152. plaintiff was then kicked in the left eye / eye socket / area.

153. once the fighting stopped plaintiff was removed from the dorm and taken to the medical area aka the infirmary of supermax.

154. at the infirmary area plaintiff was placed in a caged waiting area with several other inmates who required medical attention.

155. plaintiff had been attending to his own wound by applying paper tissue to his left eye which was stained with a small amount of blood.

156. after approximately 15 to 20 minutes of waiting plaintiff was called to see Nurse Doe 27.

157. plaintiff was evaluated by Nurse Doe 27 and plaintiff explained that he was kicked in the face in his left eye socket, and explained he had been bleeding a little but it had stopped, plaintiff said "I was kicked in the left eye" , "I was bleeding a little, but it stopped" ., "look at this tissue" and plaintiff showed the bloody tissue to Nurse Doe 27.

158. Nurse Doe 27 then said "you probably got scratched in your eye"

159. Nurse Doe 27 then treated plaintiff for swelling, and asked plaintiff to return to the caged waiting area.

160. plaintiff then said "thats it?" and Nurse Doe 27 replied "thats it".

161. plaintiff then returned to the caged waiting area for inmates.

162. approximately 30 to 45 minutes later plaintiff and 5 other white inmates who were previously in dorm 726 were transferred to dorm 711.

163. On or about 06/18/13 plaintiff was moved to dorm 516 along with one other inmate

164. dorm 516 is an educational dorm and non-violent dorm.for MERIT program.

165. on or about 06/19/13 plaintiff was removed from dorm 516 and was transferred to Los Angeles County Jail TTCF 450 Bauchet st. Los Angeles , CA 90012.

166. on or about 06/24/13 plaintiff was transferred back to Los Angeles County Jail NCCF 29300 The Old Road , Castaic , CA 91384.

on or about 06/25/13 plaintiff was taken to the infirmary of supermax for an appointment with the on-site opthomologist Doctor Doe 28.

167. Doctor Doe 28 medically evaluated plaintiff and plaintiff asked Doctor Doe 28 "am I legally blind?" , Doctor Doe 28 replied "without glasses , yes you are".

168. Doctor Doe 28 then dialated plaintiffs eyes to examine plaintiffs inner eyes.

169. approximately 15 minutes later plaintiffs eyes were fully dialated and Doctor Doe 28 examined inside plaintiffs eyes.

170. Doctor Doe 28 immidiately found several medical issues with plaintiffs eyes.

171. Doctor Doe 28 told the plaintiff "you have a fairly large hole in your left eye , and you have a detatched retina in your left eye" , "you also have an issue in your right eye but it may be older and i cant tell what it is".

172. Doctor Doe 28 then reffered plaintiff to be transported to LAC+USC medical center for emergency care.

173. upon arrival to LAC+USC medical center plaintiff was placed in the jail ward, and was medically evaluated by Doctor Doe 29.

174. Doctor Doe 29 was unable to diagnose plaintiff due to lack of his scope of care

14

175. Doctor Doe 29 then referred plaintiff to a retina specialist, Doctor Doe 30.

176. Doctor Doe 30 and several other specialists and retina experts took turns examining plaintiff in both eyes.

177. after approximately 1 to 2 hours of examinations and testing on plaintiffs eyes the senior resident of the retina department told plaintiff "you have bilateral detatched retina's, that means your retina's in the back of each eye are detatching because there is fluid built up behind the retina and the wall of your eye, and your left eye also has a large horseshoe tear in it, your right eye is not as serious and possibly an older injury, give or take 3 to 4 months old because there is scarring." "you will need surgery to repair your left eye and the retina inside your left eye, after surgery you will need to use some drops that will help it heal, and may help your right eye too, If your right eye doesn't heal after a few months , you may require a second surgery on your right eye also".

178. on or about 06/25/13 LAC+USC doctors and retina specialists performed surgery on plaintiffs left eye, drained the fluid, implaned a sclural buckle and closed the hole in plaintiffs left eye.

179. on or about 07/01/13 plaintiff was returned to Los Angeles County Jail TTCF 450 Bauchet st. Los Angeles , CA 90012.

180. plaintiff was provided a wheel chair and placed in Correctional treatment center

181. approximately two weeks later on or about 07/14/13 plaintiff was transported to LAC+USC medical center for an appointment with the retina doctors.

182. while consulting with the retina specialists plaintiff asked "can you help me get some glasses , so I can see?".

183. the retina specialists then said "we will see what we can do"

184. approximately 5 minutes later plaintiff was presented with  3 pairs of perscription glasses that were close to plaintiffs perscription, and plaintiff was asked "which one do you preffer?".

185. plaintiff tried them on then selected a pair, and was able to see once again.

186. plaintiff was so overwhelmed he began to cry.

187. plaintiff was then returned to Los Angeles County Jail TTCF 450 Bauchet st. Los Angeles, CA 90012

188. on or about 07/20/13 plaintiff began to ask for grievance forms and ask questions to his unit officers about how to take legal action against Los Angeles County for his injuries.

189. plaintiff held at least 3 seperate conversations on different dates with each of the following officers while living at CTC 3 west, Pinkerton, Leyva , and Diaz.

190. plaintiff asked for grievance forms numerous times and was told "we don't have any forms" and "why do you need forms?".

191. plaintiff explained his story to each officer , pinkerton , Leyva , and Diaz and they offered plaintiff the following advice, "you should wait until you are released to file any actions against Los Angeles County" and "you cant sue Los Angeles County until you file in court" and " you have two years to begin a lawsuit from the day you were injured".

192. none of the officers ever mentioned a claim form or claim procedure for Los Angeles County, therefore plaintiff had no knowledge of claim procedure at that time because plaintiff was provided with misrepresented and erronious information by three Los Angeles County Sheriff's Dept. Officers.

193. on or about 10/13/13 plaintiff underwent surgery to his right eye at LAC+USC medical center, and retina specialists drained fluid from the retina and implanted a sclural buckle on plaintiff's right eye.

194. approximately 30 to 45 days later plaintiff was discharged from the correctional treatment center and placed in the general population.

195. on or about 11/22/13 plaintiff was given a pass to report to the 5000 floor area of Mens Central Jail and meet with a Jewish Chaplain per plaintiffs request on or about 05/20/13

196. plaintiff met with chaplain doe 32 and conducted a private consultation inside an office normally used for prodestant inmates and chaplains.

197. plaintiff discussed his prior injuries and surgeries with the chaplain and plaintiff explained how he was without glasses for several months.

198. plaintiff told chaplain doe 32 "I was able to get glasses for free at USC+LAC medical center from my doctors".

199. after approximately 20 minutes plaintiff and chaplain doe 32 ended their consultation and plaintiff returned to his housing area on 4000 floor.

200. on or about 12/10/13 plaintiff was transferred to dorm 5800 in MCJ 441 Bauchet st. Los Angeles , CA 90012.

201. onabout 12/25/13 two Jewish chaplains, Chaplains Doe 33 and Doe 34 had unexpectedly came to meet with plaintiff at dorm 5800.

202. plaintiff thought this was strange or unusual because plaintiff did not request this meeting and did not recieve a pass.

203. upon belief and information , chaplains doe 33 and doe 34 contacted the officer on duty inside the control booth of dorm 5800 and requested that plaintiff come out to the hallway.

204. officer doe 35 then called for the inamte liason aka house mouse, and asked him to go get plaintiff because the jewish chaplains want to see him.

205. the inmate liazon aka house mouse then approached plaintiff and said "I was told to tell you to go to the door because some jewish priests want to meet with you" and "I didn't know you were jewish" and "are you really jewish"

206. plaintiff then went to the front of the dorm and waited by the door then the door unlocked electronically and plaintiff stepped out into the hallway.

207. chaplains doe 33 and doe 34 then introduced themselves and began to talk with plaintiff right there in the hallway near the door to dorm 5800.

208. plaintiff then noticed several inmates looking through the glass window of the door to dorm 5800 and plaintiff asked "can we go talk in an office?".

209. chaplain doe 33 then said "there are no offices available because its christmas"

210. chaplain doe 34 then said "this wont take long,this area will do" suggesting the hallway.

211. after approximately 10 - 15 minutes chaplains doe 33 and doe 34 said goodbye and plaintiff returned to dorm 5800.

212. on or about 12/26/13 plaintiff was approached by several white inmates in dorm 5800 and they said "we need you to move to another bed and someone else is getting your bed" plaintiff said "no" and "why?" and plaintiff was told "thats how it has to be"

213. plaintiff decided to move rather than make a conflict or resort to violence.

214. plaintiff moved his belongings to the bed near the bathroom, the most undesireable bed in the dorm.

215. plaintiff wanted to complain to the officer on duty inside the control booth however, inmates were not permitted to speak directly to officer doe 36 in the booth

216. plaintiff was also told to clean the dorm everyday by sweeping and mopping and emptying the trash bin, normally inmates would recieve extra food for doing the chores but plaintiff did not get any food as compensation for his work.

217. plaintiff tried to bring this to the attention of the leaders of the whites but it was brushed aside as unimportant and irrelevant to their concerns.

218. on or about 12/29/13 plaintiff was attempting to get the mop bucket because he needed to use it. plaintiff then noticed that someone had taken a plastic bag, fruit and apple juice to make home brewed wine in the mop bucket, plaintiff left it alone and performed another chore until the bucket was available again.

219. on or about 12/31/13 plaintiff was sick with a cold and was resting on the top bunk of the bed near the bathroom, when plaintiff saw several inmates passing around and drinking home brewed wine aka pruno.

220. plaintiff saw several inmates getting drunk and acting intoxicated and plaintiff asumed they were celebrating new years eve.

221. approximately one hour after plaintiff observed inmates drinking alcohol.

222. approximately 3-4 white inmates approached plaintiffs bed and then pulled plaintiff out of his bed from the top bunk to the floor, face first.

223. plaintiff was stunned and then tried to get up but was struck several more times to the face and head until plaintiff lost consiousness.

224. upon belief and information, plaintiff was dragged to the shower room and placed under running water on the shower room floor.

225. when plaintiff awoke sometime later, plaintiff was laying in a large pool of blood and water on the shower floor.

226. it was not clear what had happened to plaintiff or why plaintiff was dizzy.

227. plaintiff was unable to see from his left eye, and plaintiffs face was very swollen, plaintiffs upper and lower teeth would not line up, and plaintiff was in extreme pain and was crying.

228. plaintiff then tried to get up and inmates around plaintiff stopped him from getting up, plaintiff was told "dont move or try to leave this area".

229. the inmates near the enterance to the shower area would not let plaintiff leave the shower room, they said "dont move or you will get hurt more" and "stay there and sit down".

230. the inmates at the enterance to the shower area would not anyone in to help plaintiff.

231. plaintiff remained in the shower room floor bleeding and soaked in blood for approximately 2 hours while the leaders of each race discussed what happened and what to do about it. there was also some argument about what really happened some inmates were trying to lie and cover up what they had done.

232. eventually some of the inmates who spoke up for plaintiff were able to enter the shower area and gave plaintiff clean clothes and a towel for his face

233. plaintiff was helped to get changed and plaintiff was given permission to leave the shower area and get help by contacting the officer on duty, however,

1    plaintiff was told "you have to tell the officers that you had a seizure and that

2    you dont know what happened to you, that you blacked out, ok?"

3    234. plaintiff agreed and then made contact with the officer on duty officer doe 37

4    235. officer doe 37 then unlocked the door to dorm 5800 electronically and plaintiff

5    walked out into the hallway.

6    236. officer doe 37 then contacted the 5000 floor control booth and approximately

7    10 officers responded to dorm 5800 and escorted plaintiff away.

8    237.officers doe 38 through 48 conducted an investigation in dorm 5800 and plaint

9    iff was taken to the medical area in mens central jail.

10   238. while at the medical area approximately 2-3 pictures were taken of plaintiffs

11   face.

12   239. the medical staff denied plaintiff treatment and told the escorting officer

13   to take plaintiff to urgent care over at tower 2 of TTCF.

14   240. plaintiff walked to urgent care and upon arrival was medically evaluated by

15   doctor doe 49.

16   241. Doctor Doe 49 the requested that plaintiff be referred to LAC+USC medical

17   center.

18   242. plaintiff was then escorted back to the medical area of MCJ to wait for a

19   ambulance.

20   243. approximately 1-2 hours later plaintiff was transported to LAC+USC by the

21   emergency medical technicias who responed to the call for transport.

22   244. upon arrival to LAC+USC medical center plaintiff was medicall evaluated by

23   doctor doe 50.

24   245. plaintiff had a CT scan done on his face , and was diagnosed with

25   246. a broken eye socket, 3 facial fractures to left cheek, a broken nose.

26   247. plaintiff was also evaluated by opthomology and diagnosed with multiple

27   perforations to his right eye and retinal detatchment to right eye.

28

248. plaintiff was told "you will need surgery to repair your orbit and cheekbone"

249. plaintiff was also told "you will need laser surgery to fix your right eye"

250. plaintiff was then returned to Los Angeles County Jail, TTCF with two appoi
ntments to perform surgery's.

251. on or about 01/08/14 plaintiff was transported to LAC+USC medical center for
eye surgery on his right eye.

252. plaintiff had approximately 300 welds done to close the holes in his eye.

253. plaintiff was then returned to Los Angeles County Jail the same day.

254. on or about 01/15/14 plaintiff was transported to LAC+USC medical center for
facial reconstruction surgery on his left cheek and eye socket.

255. plaintiff had 3 titanium plates implanted to his skull and some orbital
shelf rebuilding inside his left eye socket.

256. on or about 01/20/14 plaintiff was returned to Los Angeles County Jail
TTCF and placed in CTC 3 west.

257. plaintiff then spent several months recovering from surgery and going back
and fourth to LAC+USC medical center.

258. on or about 04/15/14 plaintiff was diagnosed with complications from surgery
to his left eye and left eye lid that caused plaintiff pain, discomfort, and
periodic double vision and dizzyness.

259. plaintiff was seen by Doctor Rogers at LAC+USC medical center and plaintiff
was referred to see an occular plastics specialist at a later date.

260. plaintiff was then returned to Los Angeles County Jail with an appointment
to return to LAC+USC medical center and meet with the occular plastics doctor.

261. on or about 04/25/14 plaintiff was transported to LAC+USC medical center for
his appointment with occular plastics.

262. plaintiff was in a wheelchair because of his dizzyness issues from surgery.

263. officer shah was was assigned to escort plaintiff to see the occular plastics
doctor.

264. when officer shah and plaintiff arrived at the eye clinic there were some people sitting in chairs who were patients being seen by doctors.

265. plaintiff saw a man use his phone to take a picture of plaintiff and then plaintiff said "no dont take my picture".

266. plaintiff was ungroomed and handcuffed in a wheelchair and was not wanting a picture taken by anyone.

267. the man took plaintiffs picture anyways and officer shah let him do it.

268. plaintiff then said "I said NO, fag"

269. officer shah then walked over to the nurses station and canceled the appoint ment for plaintiff to see the ocular plastics doctor about his complication.

270. plaintiff pleaded with the escort officers and officer shah but plaintiff was taken back down to the jail ward and placed in a holding tank waiting for transport back to Los Angeles County Jail.

271. plaintiff asked to speak to the nurse on duty in the jail ward and explained to Nurse Cindy that some man was trying to take his picture and officer shah wouldn't stop him , therefore, plaintiff made a vulgar statement and then plaintiffs appointment was canceled by officer shah and plaintiff was not seen.

272. plaintiff was then taken back to Los Angeles County Jail.

273. on or about 04/29/14 while under the care of Nurse Practicioner Malone plaintiff was discharged from the correctional treatment center to make room for new inmates, although plaintiffs medical issues were unresolved.

274. plaintiff was then placed in a mental health housing unit.

275. plaintiff was not taken to any future LAC+USC appointments.

276. on or about 05/02/14 plaintiff developed an infection on his buttoc and from the dirty cell he was placed into at the mental health area.

277. plaintiff brought his infection to the attention of the nurses who had been brining his medication to his cell 3 times a day.

278. plaintiff also explained to the nurse that he was supposed to be going to LAC+USC medical center for an appointment very soon.

279. plaintiff asked the nurses to check on his appointment at LAC+USC medical center, plaintiff said "can you please check on my appointment for my eye?".

280. plaintiff was told that the nurse would talk to the doctor about it.

281. plaintiff recieved medication for his infection the next day. on or about 05/06/14.

282. on or about 05/08/14 plaintiff was in custody transferred to prison and then placed into the custody of California Department of Corrections and rehabilitation at North Kern State Prison , Delano California

283. plaintiff arrived at North Kern State Prison with complications unresolved.


CONTINUED ON NEXT PAGE

"

"

"

"

"

"

"

"

"

"

"

"

"

"

"

"

23

V. LEGAL CLAIMS

FIRST CAUSE OF ACTION FOR INADEQUATE MEDICAL CARE

284. plaintiff incorporates paragraphs 23 through 38

285. on or about 02/01/13 plaintiff was in custody at Los Angeles County Jail and had a serious medical need because plaintiff is severely nearsighted and was without glasses, causing plaintiff to be legally blind, plaintiff was there fore, placed among the class of persons to whom Defendant Doctor Doe 1 owed a duty as part of a special relationship.

286. Defendant Doctor Doe 1 failed to provide plaintiff with any form of care or assistance for plaintiffs vision impairment, although defendant doctor doe 1 had several options that would of provided plaintiff with some form of assistance

287. Defendant Doctor Doe 1 had knowledge of plaintiffs serious medical needs because plaintiff informed him of his impairment during consultation, this is clearly shown in paragraphs 28 through 34, therefore Defendant Doctor doe 1 was deliberately indifferent.

288. Defendant doctor doe 1's actions or omissions violated plaintiffs right to be free of cruel and unusual punishment guaranteed by the 8th and 14th amendments of the constitution

289. as a direct and proximate result of defendant doctor doe 1's actions or ommissions described in this complaint, plaintiff was not classified properly and was transferred to NCCF, then plaintiff was expected to perform at the level of a normal inmate, plaintiff fell short of that expectation and was subjected to disciplinary action, plaintiff was placed at substantial risk of serious harm by being at NCCF and by being placed into disciplinary actions, on or about 02/14/13 plaintiff suffered injury and pain and emotional distress, in that plaintiff was struck in the eyes and face several times by a dangerous inmate and plaintiff was vulnerable to be injured as a result of defendant doctor doe 1's provision of inadequate medical care

290. defendant doctor doe 1 acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiffs federally protected rights.

291. as a result of defendant doctor doe 1's actions or omissions plaintiff has suffered and will continue to suffer extreme hardship and actual and impending irreparable injury,pain, and emotional distress in that plaintiff required surgery to his right eye due to this injury, plaintiff has lost visual acuety and has reoccuring and continuing issues related to this injury.

SECOND CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

292. plaintiff incorperates paragraphs 23 through 38

293. on or about 02/01/15 plaintiff was in custody at Los Angeles County Jail and was an inmate, plaintiff was therefore, placed among the class of persons to whom Defendants doctor doe 1, lee baca, terri mcdonald, david fender, kelley fraser, ray leyva, ralph ornelas, karen dalton, kevin kuykendall, paul tanaka, owed a duty as part of a special relationship.

294. Defendants SUPRA had a duty to use such skill, prudence, and diligence as other members of his or her profession commonly possess and exercise,

295. Defendants SUPRA negligently failed to provide plaintiff with some form of assistance for his vision impairment, and also failed to properly classify plaintiff for his serious medical needs, so as to cause plaintiff to become exposed to several substantial risks of serious harm while plaintiff was vulnerable, and directly and proximately caused the injuries and damages described below

296. as a direct and proximate result of the negligence of defendants SUPRA, plaintiff was injured on or about 02/14/13 and was punched in his eyes and face several times by a dangerous inmate, and plaintiff was hurt and injured in his health, strength, and activity, sustainting injury to his nervous system and person, all of which injuries caused, and continue to cause, plaintiff great mental, physical, emotional, and nervous pain and suffering,

1  297. defendants SUPRA acted knowingly, willfully, and maliciously, and with a

2  reckless and callous disregard for plaintiffs federally protected rights.

3  298. as a result of defendants SUPRA actions or omissions plaintiff has suffered

4  and will continue to suffer extreme hardship and actual and impending irreparable

5  injury, pain, and emotional distress in that plaintiff required surgery to his

6  right eye due to this injury, plaintiff has lost visual acuety and has reoccuring

7  and continuing issues related to this injury.

8  THIRD CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

9  299. plaintiff incorperates paragraphs 23 through 38

10  300. on or about 02/01/13 plaintiff was an inmate at Los Angeles County Jail

11  and was in the care of defendant doctor doe 1.

12  301. on or about 02/01/13 at the inmate reception center located in TTCF, plaintiff

13  informed defendant doctor doe 1, that plaintiff was vision impaired and that

14  plaintiff could not see properly, in responce defendant doctor doe 1 said

15  " I have other inmates to see, im sorry but i cannot help you" and then failed

16  to provide any assistance to plaintiff for his disability, which left plaintiff

17  vulnerable and exposed plaintiff to several substantial risks of serious harm.

18  302. Defendant Doctor doe 1's conduct was negligent and careless or reckless,

19  and done because defendant doctor doe 1 was complaicent in his duties and did

20  not use proper care, causing plaintiff to suffer mental anguish, and emotional

21  and physical distress, Defendant doctor doe 1's conduct was done with a wanton

22  and reckless disregard of the consequences to plaintiff.

23  303. as the proximate result of the acts alleged above, plaintiff suffered the

24  feelings of worry , fright, and grief in that plaintiff was about to encounter

25  a great difficulty and dangerous experiance on his own while vulnerable, plain

26  tiff felt afraid and the sudden and extreme fear or terror lurking, plaintiff

27  felt sharp sorrow and difficulty or annoyance caused by mental anguish, and

28  emotional distress, and plaintiff has been injured in mind and body.

304. the acts of defendant doctor doe 1 alleged above were negligent, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

FOURTH CAUSE OF ACTION FOR FAILURE TO PROTECT

305. plaintiff incorporates paragraphs 39 through 82

306. on or about 02/12/13 plaintiff was in custody at Los Angeles County Jail therefore, plaintiff was placed among the class of persons to whom defendants owed a duty as part of a special relationship.

307. defendant officer ortiz wrongly and unjustly placed plaintiff under a state of disciplinary action, then became angery and loud towards plaintiff because defendant officer ortiz thought plaintiff was lieing about his vision impairment therefore, defendant officer ortiz acted with malice and wanton manner and also created circumstances which intentionally placed plaintiff at danger and at several substantial risks of serious harm,

308. plaintiff alleges that he was exposed to the following substantial risks of serious harm, (1) Inadequate classification, plaintiff was vision impaired by meaning of physical disability, therefore plaintiff was at risk of general injury (2) plaintiff was unusually vulnerable, plaintiff could not see properly, and plaintiff was an obvious target for potantial abuse by other stronger or more agressive inmates, (3) High rate of violence, fighting between inmates was common and uncontrolled at the jail and was an obvious and pervasive risk with long standing history at the jail, (4) overcrowding, due to AB 109 the jail was at a constant high volume of inmates who, under normal circumstances would be in state prisons, therefore, creating excessive risk of violence, (5) understaffing the jail was not staffed with enough guards to provide adequate safety, (6) insufficient inspections, guards failed to make regular inspections of inmate living areas, (7) state of nature, guards lack of supervision often allowed inmates to exercise too much control over other inmates, creating a state of nature

1  or a condition where everyone runs wild, (8) attacker is unusually dangerous

2  plaintiff was placed into a cell with a known violent inmate who was aggressive

3  and stronger than plaintiff, (9) upon information and belief, defendant officer

4  ortiz instructed other officers to place plaintiff into a cell with a dangerous

5  inmate with the intent to allow plaintiff to be picked on and beaten by a stronger

6   more aggressive inmate, in the furtherance of punishment and to teach plaintif

7  a lesson.

8  309. defendant officer ortiz had knowledge of plaintiff's vision impairment and

9  plaintiff made his impairment clear to defendant officer ortiz, as shown in

10  paragraphs 55 and 56 , defendant officer ortiz also knew of the high rate of

11  inmate-on-inmate violence at the jail, and knew of the overcrowding caused by

12  AB 109, defendant officer ortiz knew of the understaffing at the jail, and the

13  insufficent inspections, defendant officer ortiz knew that inmates often exercised

14  control over other inmates, and knew that inmates at the disciplinary are were

15  unusually dangerous, defendant officer ortiz knew that plaintiff was likely to

16  suffer some form of attack, injury by placing plaintiff into disciplinary action

17  310. defendant officer ortiz did not reasonably respond to abate the substantial

18  risks of serious harm to plaintiff, defendant officer ortiz took it into his

19  power to abuse his authority and submit plaintiff to the creation of danger,

20  and the imposition of punishment through malicious and wanton manner.

21  311. as a proximate and direct result of defendant officer ortiz's actions

22  plaintiff was placed into a cell with a dangerous inmate who acted aggressive

23  and plaintiff was vulnerable by disability, plaintiff was attacked on or about

24  02/14/13 and punched in the face and eyes several times causing pain and injury

25  312. defendant officer ortiz acted knowlingly, willfully, and maliciously, and

26  with reckless and callous disregard for plaintiffs federally protected rights.

27  313. as a result of defendant officer ortiz's actions plaintiff has suffered

28  and will continue to suffer extreme hardship and actual and impending irreparable

1  injury, pain, and emotional distress in that plaintiff required surgery to his

2  right eye due to this injury, plaintiff has lost visual acuety and has reoccuring

3  and continuing issues related to this injury.

4  FIFTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

5  314. plaintiff incorperates paragraphs 39 through 82

6  315. on or about 02/12/13 plaintiff was in custody at Los Angeles County Jail

7  and was an inmate, plaintiff was therefore, placed among the class of persons

8  to whom defendants officer ortiz, lee baca, paul tanaka, and terri mcdonald

9  owed a duty as part of a special relationship.

10  316. defendants named SUPRA had a duty to use such skill, prudence, and diligence

11  as other members of his or her profession commonly possess and exercise.

12  317. defendants named SUPRA negligently placed plaintiff into a state of unjust

13  and unwarranted disciplinary action, then manipulated circumstances to place

14  plaintiff at substantial risk of serious harm, in further ance of punishment to

15  plaintiff and acted in wanton or malicious manner toward plaintiff, so as to

16  cause plaintiff to be attacked by an aggressive and violent inmate at the disci

17  plinary area of the jail and directly and proximately caused the injuries and

18  damages described below.

19  318. as a direct and proximate result of the negligence of defendants named SUPRA

20  plaintiff was attacked by a dangerous and violent inmate on or about 02/14/13

21  and was punched in his eyes and face area causing pain and injury, plaintiff was

22  injured in his health, strenth, and activity, sustaining injury to his nervous

23  system and person, all of which injuries have caused, and continue to cause,

24  plaintiff great mental, physical, emotional and nervous pain and suffering,

25  319. defendants named SUPRA acted negligently, willfully, and maliciously, and

26  with a reckless and callous disregard for plaintiffs federally protected rights

27  320. as a result of defendants named SUPRA actions or omissions plaintiff has

28  suffered and will continue to suffer extreme hardship and actual and impending

1    irreparable injury, pain, and emotional distress in that plaintiff required

2    surgery to his right eye due to this injury, plaintiff has lost visual acuety

3    and has reoccuring and continuing issues related to this injury.

4    SIXTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

5    321. plaintiff incorperates paragraphs 39 through 82

6    322. on or about 02/12/13 plaintiff was an inmate at Los Angeles County Jail

7    and was in the care of defendant officer ortiz,

8    323. on or about 02/12/13 at the 700 area of supermax NCCF plaintiff informed

9    defendant officer ortiz that he was vision impaired and needed glasses, defendant

10   officer ortiz in responce, shouted at plaintiff in a rude, violent, and insolent

11   manner as follows, plaintiff refers to paragraph 56

12   324. defendant officer ortiz's conduct was intentional and malicious and done

13   for the purpose of causing plaintiff to suffer mental anguish, and emotional

14   and physical distress, defendant officer ortiz's conduct was done with a wanton

15   and reckless disregard of the consequences to plaiontiff.

16   325. as the proximate result of the acts alleged above, plaintiff suffered

17   fright, worry, grief, shame, humiliation, and embarrassment and caused plaintiff

18   mental anguish, and emotional and physical distress, plaintiff felt very afraid

19   and sudden and extreme terror and sharp sorrow, painful regret and difficulty,

20   plaintiff felt dishonored, disgraced, and dissappointed, plaintiff felt a painful

21   loss of pride, self respect and dignity or burdened with shame and self-conscious

22   ness and was injured in mind and body,

23   326. the acts of defendant officer ortiz above were willfull, wanton, malicious

24   and oppressive and justify the awarding of exemplary and punitive damages.

25   SEVENTH CAUSE OF ACTION FOR FAILURE TO PROTECT (6 counts)

26   327. plaintiff incorperates  paragraphs 57 through 82

27   328. on or about 02/12/13 plaintiff was in custody at Los Angeles County Jail

28   therefore, plaintiff was placed among the class of persons to whom defendants

1  doe 2 through doe 7 owed a duty as part of a special relationship,

2  329. defendants doe 2 through 7 were careless when dealing with plaintiff and

3  when dealing with the circumstances sourrounding the plaintiff, plaintiff was

4  wrongly and unjustly placed under disciplinary action by defendant officer ortiz

5  then defendants officers doe 2 and doe 3 recieved custody of plaintiff and chose

6  to ignore the statements made by the plaintiff, shown in paragraph 60, then

7  defendants officers doe 2 and doe 3 responded in a wanton and malicious manner

8  shown in paragraph 61, defendants officers doe 2 and doe 3 acted unprofessionally

9  and with the intent to further punishment to plaintiff,

10  330. then defendants officers doe 4 and doe 5 took plaintiff into their custody

11  for the purpose of escorting plaintiff to the disciplinary area (900 max) and

12  defendants officers doe 4 and doe 5 acted carelessly and recklessly toward plain

13  tiff because plaintiff tried to explain his vision impairment disability to both

14  defendants officers doe 4 and doe 5, shown in paragraphs 65 and 67, however,

15  defendants officers doe 4 and doe 5  refused to listen to plaintiff, then they

16  responded to plaintiff in a rude and arrogant manner shown in paragraph 66.

17  331. once at the disciplinary area (900 max) plaintiff was transferred into the

18  custody of defendants officers doe 6 and doe 7 who also acted careless and

19  unreasonable towards plaintiff,  plaintiff was ignored by defendants officers

20  doe 6 and doe 7 when plaintiff attempted to explain his disability and the

21  circumstances surrounding the plaintiff, shown in paragraph 72 and 74, then

22  defendants officers doe 6 and doe 7 both acted as though they were seeking

23  to extend the intent of officer ortiz in furtherance of punishment by ignoring

24  plaintiff then making wanton and malicious statements to plaintiff, shown in

25  paragraphs 74 and 75, defendants officers doe 2 through doe 7 therefore, acted

26  wantonly , maliciously, and with deliberate indifference towards plaintiff and

27  the circumstances that sourrounded plaintiff, and disregarded plaintiff's rights

28

332. plaintiff alleges that defendants officers doe 2 through doe 7 placed

plaintiff and exposed plaintiff to the following substantial risks of serious

injury, (1) improper classification, plaintiff was vision impaired, by meaning

of physical disability, therefore plaintiff was placed at general risks, (2)

plaintiff was unusually vulnerable, plaintiff could not see properly therefore

plaintiff was an obvious target for potential abuse by other stranger more agg

ressive inmates, (3) high rate of violence, inmate-on-inmate violence was high

fighting was common and uncontrolled and was an obvious and pervasive risk with

long standing history at the jail, (4) overcrowding, due to AB 109 the jail was

at a constant high volume of inmates , who would normally be in prisons, theref

ore, causing an excessive risk of violence, (5) understaffing, the jail was not

staffed with enough guards to provide adequate safety, (6) insufficient inspecti

ons, guards failed to make regular inspections of inmate living areas, (7)

state of nature, guards lack of supervision caused inmates to exercise control

over other inmates, creating a state of nature, or condition where everyone run

s wild, (8) attacker was unusually dangerous, plaintiff was placed into a cell

with a known violent and dangerous inmate who was aggressive and stronger than

plaintiff, (9) officials encouraged attack, plaintiff upon information and

belief, was intentionally placed into a cell with a dangerous inmate to create

a form of punishment for plaintiff, intent that began with defendant officer

ortiz and carried over through defendants officers doe 2 through doe 7, as

aiders and abeders, plaintiff was intentionally subjected to several risks,

defendants officers doe 2 through doe 7 had reason to believe that plaintiff

would sustain some form of injury and chose not to intervene or question their

own conduct or the conduct of their peers,

333. defendants officers doe 2 through doe 7 had knowledge that plaintiff had

a legitimate vision impairment disability, shown in paragraphs 60,65,67,72,74

defendants officers doe 2 through doe 7 ignored plaintiffs statements shown in

paragraphs 61,66,68,73,74,75, defendants officers doe 2 through doe 7 also knew plaintiff was vulnerable due to his disability, and knew that the jail had a high rate of inmate-on-inmate violence, defendants officers doe 2 throughdoe 7 also knew the jail was overcrowded and it caused excessive violence, and also knew thatthe jail was often understaffed, defendants officer doe 2 through doe 7 knew that the guards did not conduct sufficent safety checks in living areas, also knew that inmates often exercise control over other inmates, anhd knew that the inmate inside plaintiff's cell was violent and dangerous and aggressive in his actions, and knew that their own actions encouraged the injury to plaintiff

334. defendants officers doe 2 through doe 7 failed to respond reasonably and abate the substantial risk of serious harm, and their conduct increased said risk

335. as a proximate and direct result of defendants officers doe 2 through doe 7 actions or omissions, plaintiff was placed into a state of disciplinary action that was unjustified and undeserved, moreover, defendants officers doe 2 through doe 7 failed to intervene and or abate risks placed upon plaintiff and plaintiff was placed into a cell with a dangerous and violent inmate who had a history of violence and controling other inmates who were vulnerable, plaintiff was attacked by the dangerous inmate in his cell on or about 02/14/13 and plaintiff was struck in the eyes and face several times, which caused pain and injury to plaintiff,

336. defendants officers doe 2 through doe 7 acted knowingly,willfully, and maliciously, and with reckless and callous disregard for plaintiffs federally protected rights.

337. as a result of defendants officers doe 2 through doe 7's actions or omissions, plaintiff has suffered and will continue to suffer extreme hardship and actual and impending irreparable injury, pain, and emotional distress in that plaintiff required surgery to his right eye due to this injury.

1   EIGHTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

2   338. plaintiff incorporates paragraphs 57 through 82

3   339. on or about 02/12/13  plaintiff was in custody at Los Angeles County Jail

4   and was an inmate, plaintiff was therefore, placed among the class of persons

5   to whom defendants officers doe 2 through doe 7, lee baca, paul tanaka, and terri

6   mcdonald , owed a duty as part of a special relationship,

7   340. defendants named SUPRA had a duty to use such skill, prudence, and diligence

8   as other members of his or her profession commonly possess and exercise,

9   341. defendants named SUPRA negligently allowed plaintiff to be wrongfully placed

10  into a state of disciplinary action, and negligently ignored or avoided plaintiff

11  while plaintiff was trying to explain that he had a disability, and therefore,

12  did not intend to refuse to cooperate during the group strip search, defendants

13  named SUPRA were responsible for plaintiff and the circumstances surrounding

14  plaintiff and could have easily investigated, and determind the facts of plaint

15  iffs claims, and could of easily abated several unnecessary risks posed to cause

16  plaintiff great difficulty and injury and pain and distress, defendants named

17  SUPRA were careless , ignorant, and reckless in their conduct so as to cause

18  plaintiff to be placed into a disciplinary cell with a known violent and danger

19  ous inmate, which directly and proximately caused the injuries and damages that

20  are described below,

21  342. as a direct and proximate result of the negligence of defendants named SUPRA

22   plaintiff was wrongfully disciplined and forced to be placed into a disciplinary

23  cell with a known violent and dangerous inmate who had a history of exercising

24  control over other inmates, on or about 02/14/13 plaintiff was attacked by the

25  dangerous inmate inside his cell and plaintiff was punched several times in the

26  eyes and face, causing injury,pain, and distress, plaintiff was hurt and injured

27  in his health, strength, and activity, sustaining injury to his nervous system

28  and person, all of which injuries have caused, and continue to cause, plaintiff

1   great mental and physical and emotional, nervous pain and suffering,

2   343. defendants named SUPRA acted negligently, willfully, and maliciously, and with

3   a reckless and callous disregard for plaintiffs federally protected rights.

4   344. as a result of defendants named SUPRA actions or omissions plaintiff has

5   suffered and will continue to suffer extreme hardship and actual and impending,

6   irreparable injury, pain, and emotional distress in that plaintiff required to

7   have surgery to his right eye due to this injury, plaintiff has lost visual acuety

8   and has reoccuring and continuing issues related to this injury.

9   NINETH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

10  345. plaintiff incorperates paragraphs 57 through 82

11  346. on or about 02/12/13 plaintiff was an inmate at Los Angeles County Jail and

12  was in the care of defendants doe 2 through doe 7,

13  347. on or about 02/12/13 at the supermax building of NCCF, plaintiff informed

14  defendants doe 2 through doe 7 that plaintiff was vision impaired, show in parag

15  raphs 60,65,67,72,74 and defendants officers doe 2 through doe 7 ignored and avoi

16  ded plaintiffs statements regarding plaintiffs disability, shown in paragraphs

17  61,66,68,73,74,75 , in responce defendants officers doe 2 through doe 7 made

18  rude and unprofessional comments shown in paragraphs 61,66,71,74,, and shouted

19  at plaintiff in a rude,violent, and insolent manner,

20  348. defendants officer doe 2 through doe 7's conduct was intentional and malicio

21  us and done for the purpose of causing plaintiff to suffer mental anguish, and

22  emntional and physical distress, defendants officers doe 2 through doe 7's conduct

23  was done with a wanton and reckless disregard of the consequences to plaintiff,

24  349. as the proximate result of the acts alleged above, plaintiff suffered by

25  feeling fright, worry, grief, shame, humiliation, embarassment throughout his

26  experiances with defendants officers doe 2 through doe 7 and after as well and

27  caused mental anguish, emotional distress and physical distress because plaintiff

28  felt very afraid, terror, sorrow and regret, dishonored,disgraced, loss of pride

1  and loss of dignity, or burdened with shame or self-consious, and has been injured
2  in mind and body,
3  350. the acts of defendants officers doe 2 through doe 7 alleged above were willful
4  , wanton, malicious, and oppressive and justify the awarding of exemplary damages.
5  TENTH CAUSE OF ACTION FOR FAILURE TO PROTECT
6  351. plaintiff incorperates paragraphs 76 through 81
7  352. on or about 02/14/13 plaintiff was in custody at Los Angeles County Jail and
8  therefore, plaintiff was placed among the class of persons to whom defendants
9  officers doe 8 and doe 9 owed a duty as part of a special relationship,
10  353. on or about 02/14/13 plaintiff was attacked by the violent and dangerous inmate
11  inside his cell, when plaintiff called for help defendants officers doe 8 and doe 9
12  responded to plaintiffs cell then hesitated at the door and watched as plaintiff
13  was repeatedly struck in the eyes and face and head, defendants officers doe 8 and
14  doe 9 also listened to plaintiff calling for help but did nothing to respond or
15  intervene in the attack upon plaintiff, moreover, plaintiff could hear defendants
16  doe 8 and doe 9 laughing at plaintiff being beaten and saying rude and unprofess
17  ional comments, shown in paragraph 80. after approximately 10 minutes plaintiff
18  heard defendants officers doe 8 and doe 9 unlock the door to the cell and plaintiff
19  was taken to the medical area for treatment of his injuries,
20  354. plaintiff alleges that he was exposed to the following substantial risks of
21  serious harm; (1) classification, plaintiff was vision impaired, by meaning of
22  physical disability, plaintiff should not have been among general population and
23  therefore, was placed at general risks, (2) plaintiff was vulnerable, and could
24  not see properly, therefore plaintiff was an obvious target for potential abuse
25  by other stronger and more aggressive inmates, (3) high rate of violence,  there
26  was a lot of inmate-on-inmate violence and it was common and uncontrolled at the
27  jail, causing an obvious and pervasive risk with long standing history at the jail
28  (4) overcrowding, due to AB 109 the jail was at a constant high capacity of inmates

who under normal circumstances would be in prisons, therefore causing an excessive

risk of violence, (5) understaffing, the jail was not staffed with enough guards

to provide adequate safety to inmates, (6) insufficent inspections, guards often

failed to make regular inspections of inmate living areas, (7) state of nature,

guards lack of supervision often allowed inmates to exercise too much control

over other inmates, creating a state of nature, were everyone runs wild, (8)

attacker was unusually dangerous, plaintiff was placed into a cell with a known

violent inmate who was dangerous and had a history of exercising control over

other inmates, while plaintiff was vulnerable, (9) officials encouraged the attack

upon the plaintiff by way of their own actions, and by their statements,

355. defendants officers doe 8 and doe 9 , knew or should have known that plaintiff

was vision impaired because plaintiff made it clear to several other officers who

worked in or around the disciplinary area and who commonly share information and

gossip about inmates and other officers on a daily basis, and also knew that

plaintiff was vulnerable, defendants officer doe 8 and doe 9 also knew about the

high rate of inmate-on-inmate violence at the jail, and knew that the jail was

always at a high rate of capacity, and knew that the jail was overcrowded,

defendants officers doe 8 and doe 9 knew that there was a shortage of guards to

work at the jail and that there were not sufficient inspections by officers,

defendants officers doe 8 and doe 9 knew that inmates often exercised too much

control over other inmates and knew it was a dangerous condition, defendants

officers doe 8 and doe 9 also knew the inmate in plaintiffs cell was dangerous

and had a history of violence and controlling other inmates, and knew that their

own actions encouraged the attack upon the plaintiff,

356. defendants officers doe 8 and doe 9 failed to responable respond or abate

any of the risks stated above, and their actions increased risks instead,

357. as a proximate and direct result of defendants officers doe 8 and doe 9's

actions or omissions plaintiff was attacked by a known violent and dangerous

1  inmate who acted aggressive toward plaintiff and plaintiff was punched in the eyes

2  and face several times causing pain and injury.for an extended period of time.

3  358. defendants officers doe 8 and doe 9 acted knowingly,willfully, and maliciously

4  and with reckless and callous disregard for plaintiffs federally protected rights

5  359.as a result of defendants officers doe 8 and doe 9's actionsplaintiff

6  has suffered and will continue to suffer extreme hardship and actual and impending

7  irreparable injury, pain, and emotional distress in that plaintiff required surgery

8  to his right eye due to this injury, plaintiff has lost visual acuety and has

9  reoccuring and continuing issues related to this injury,

10 ELEVENTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

11 360. plaintiff incorperates paragraphs 76 through 81

12 361. on or about 02/14/13 plaintiff was in custody at Los Angeles County Jail and

13 was an inmate, plaintiff was therefore, placed among the class of persons to whom

14 defendants officers doe 8 and doe 9 , lee baca, paul tanaka, and terri mcdonald

15 owed a duty as part of a special relationship;

16 362. defendants named SUPRA had a duty to use such skill,prudence, and diligence

17 as other members of his or her profession commonly possess and exercise,

18 363. defendants named SUPRA negligently failed to open the door and intervene

19 when plaintiff was being attacked by a stronger and more aggressive inmate, and

20 plaintiff was vulnerable,  so as to cause plaintiff to be exposed to extended

21 pain and injuries while plaintiff was being beaten, and directly and proximately

22 caused the injuries and damages described below,

23 364. as a direct and proximate result of the negligence of defendants named SUPRA

24 plaintiff was punched in his face , eyes , and head for an extended period of time

25 causing plaintiff to be hurt and injured in his health, strength, and activity

26 sustaining injury to his nervous system and person, all of which injuries have

27 caused, and continue to cause, plaintiff great mental, physical , and emotional

28 and nervous pain and suffering.

365. defendants SUPRA acted knowingly, willfully, and maliciously, and with a reckless and callous disregard for plaintiffs federally protected rights.

366. as a result of defendants SUPRA actions or omissions plaintiff suffered and will continue to suffer extreme hardship and actual and impending irreparable injury, pain, and emotional distress in that plaintiff required surgery to his right eye due to this injury, plaintiff has lost visual acuety and has reoccuring and continuing issues related to this injury.

TWELVETH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

367. plaintiff incorperates paragraphs 76 through 81

368. on or about 02/14/13 plaintiff was an inmate at Los Angeles County Jail and was in the care of defendants officers doe 8 and doe 9,

369. on or about 02/14/13 at the disciplinary area of NCCF known as 900 max, plaintiff yelled for help several times because plaintiff was being attacked by the violent and dangerous inmate inside plaintiffs cell, in responce defendants officers doe 8 and doe 9 stood outside the cell with the door locked and watched and listened to plaintiff being attacked, then made rude, and unprofessional comments, shown in paragraph 80, defendants officers doe 8 and doe 9 also laughed at the expense of plaintiff,

370. defendants officers doe 8 and doe 9's conduct was intentional and malicious and done for the purpose of causing plaintiff to suffer mental anguish, and emotional and physical distress, defendants officers doe 8 and doe 9 conduct was done with a wanton and reckless disregard of the consequences to plaintiff,

371. as the proximate result of the acts alleged above, plaintiff suffered fright, worry, grief, shame, humiliation, and embarrasment and mental anguish, and emotional distress and physical distress because plaintiff became afraid for his life and felt sudden and extreme terror, and sharp sorrow and annoyance, plaintiff felt dishonored and disgraced and was dissappointed by the reaction of defendants officers doe 8 and doe 9, plaintiff felt a loss of pride, self respect and dignity

plaintiff felt burdened with shame and self-consious, and was injured in mind and body,

372. the acts of defendants officers doe 8 and doe 9 alleged above were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages,

THIRTEENTH CAUSE OF ACTION FOR INADEQUATE MEDICAL CARE

373. plaintiff incorperates paragraphs 82 through 85

374. on or about 02/14/13 plaintiff was in custody at Los Angeles County Jail and had a serious medical need because plaintiff had been attacked by another inmate and plaintiff was struck several times in his face, eyes, and head, which caused pain and injury, plaintiff was therefore, placed among the class of persons to whom defendant nurse doe 10 owed a duty as part of a special relationship,

375. defendants nurse doe 10 failed to provide plaintiff with sufficient care for his innjuries because plaintiff had sustained internal eye injuries,

376. defendant nurse doe 10 had knowledge of plaintiff's serious medical need because it was clear and obvious that plaintiff had received trama to his eyes, and defendant nurse doe 10 was deliberately indifferent to plaintiffs serious medical needs,

377. defendant nurse doe 10's actions or omissions, violated plaintiffs right to be free of cruel and unusual punishment, guaranteed by the 8th and 14th amendments to the constitution,

378. as a direct and proximate result of defendant nurse doe 10's actions or omissions, described in this complaint, plaintiff did not receive proper treatment for his internal eye injuries caused by trama, and plaintiff was released from jail with untreated injuries, which would go untreated until on or about 06/25/13 and plaintiff suffered, in that his condition worsened and caused substantial medical issues that required surgery and other treatment as a result of defendants nurse doe 10's provision of inadequate medical care,

379. defendant nurse doe 10 acted knowingly, willfully, and maliciously, and with a reckless and callous disregard for plaintiffs federally protected rights,

380. as a result of defendant nurse doe 10's actions or omissions, plaintiff has suffered and will continue to suffer extreme hardship and actual and impending irrep arable injury, pain, and emotional distress in that plaintiff required surgery to his right eye and suffered loss of vision acuety along with several other issues that are reoccuring and continuing because of this provision of inadequate medical care by defendants nurse doe 10,

FOURTEENTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

381. plaintiff incorperates paragraphs 82 through 85

382. on or about 02/14/13 plaintiff was in custody at Los Angeles County Jail and was an inmate, plaintiff was therefore, placed among the class of persons to whom defendants nurse doe 10, lee baca, david fender, kelley fraser, ray leyva, ralph ornelas , karen dalton, kevin kuykendall owed a duty as part of a special relationship,

383. defendants named SUPRA had a duty to use such skill, prudence, and diligence as other members of his or her profession commonly possess and exercise,

384 A defendants named SUPRA negligently failed to provide or refer proper treatment for plaintiffs internal eye injuries, so that plaintiff would have complete and proper treatment for his injuries, and plaintiff could be released without futher issues, plaintiffs internal eye injuries went undiagnosed, and untreated until on or about 06/25/13 when plaintiff was schedueled to see the on-site eye care doctor at NCCF,

384 B as a direct and proximate result of the negligence of defendants named SUPRA, plaintiffs internal eye injuries went undiagnosed , untreated , and plaintiffs eye health worsened over time, causing detatched retina and causing plaintiff to require surgery on his right eye, and was hurt and injured in his health, strength, and acti vity, sustaining injury to his nervous system and person, all of which injuries have caused, and continue to cause, plaintiff great mental, physical, emotional, and nerv ous pain and suffering,

385. defendants named SUPRA acted negligently, willfully, and maliciously, and with

a reckless and callous disregard for plaintiffs federally protected rights,

386. as a result of defendants named SUPRA actions or omissions plaintiff has suffered

and will continue to suffer extreme hardship and actual and impending irreparable

injury, pain, and emotional distress in that plaintiff required surgery to his right

eye due to prior injury and plaintiffs visual acuety has deteriorated, plaintiff has

reoccuring and continuing issues related to this injury,

FIFTEENTH CAUSE OF ACTION FOR INADEQUATE MEDICAL CARE

387. plaintiff incorperates paragraphs 96 through 108

388. on or about 05/13/13 plaintiff was in custody at Los Angeles County Jail and had

a serious medical need because, plaintiff is severely nearsighted and was without

glasses, causing plaintiff to be legally blind, plaintiff was therefore, placed among

the class of persons to whom defendant doctor doe 12 owed a duty as part of a special

relationship,

389. defendant doctor doe 12 failed to provide plaintiff with any form of care or

assistance for plaintiffs vision impairment, although defendant doctor doe 12 had

several options that would of provided plaintiff with some form of assistance,

390. defendant doctor doe 12 had knowledge of plaintiffs vision impairment because

plaintiff had discussed it with defendant doctor doe 12, shown in paragraphs 100,101

and defendant doctor doe 12 denied plaintiff any care, shown in paragraph 102 ,

therefore, defendant doctor doe 12 was deliberately indifferent to plaintiffs serious

medical needs,

391. defendant doctor doe 12's actions or omissions violated plaintiffs right to be

free of cruel and unusual punishment, guaranteed by the 8th and 14th amendments to

the constitution,

392. as a direct and proximate result of defendant doctor doe 12's actions or omissions

described in this complaint, plaintiff was not provided any care or assistance for his

vision impairment and plaintiff was not cassified properly, then transferred to NCCF,

42

1   then plaintiff was expected to perform at the level of a normal inmate, plaintiff

2   fell short of that expectation and was subjected to disciplinary action, plaintiff

3   was placed at substantial risk of serious harm by being at NCCF and by being placed

4   among the general population, on or about 06/15/13  plaintiff was injured and suffered

5   injury, pain, and emotional distress in that plaintiff was struck in the left eye

6   socket by an inmate who was involved in a riot, as a result of defendant doctor doe

7   12's provision of inadequate medical care,

8   393. defendant doctor doe 12 acted knowingly, willfully, and maliciously, and with

9   reckless and callous disregard for plaintiffs federally protected rights,

10  394. as a result of defendant doctor doe 12's actions or omissions plaintiff has

11  suffered and will continue to suffer extreme hardship and actual and impending

12  irreparable injury, pain, and emotional distress in that plaintiff required surgery

13  to his left eye due to this injury, plaintiff has lost visual acuety and has reoccuring

14  and continuing issues related to this injury,

15  SIXTEENTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

16  395. plaintiff incorperates paragraphs 96 through 108

17  396. on or about 05/13/13 plaintiff was in custody at Los Angeles County Jail and was

18  an inmate, plaintiff was therefore, placed among the class of persons to whom

19  defendants doctor doe 12, lee baca, david fender, kelley fraser, ray leyva, ralph

20  ornelas, karen dalton, kevin kuykendall owed a duty as part of a special relationship

21  397. defendants named SUPRA had a duty to use such skill, prudence, and diligence as

22  other members of his or her profession commonly possess and exercise,

23  398. defendants named SUPRA negligently allowed plaintiff to be placed among the

24  general population, and negligently failed to provide such services or care to provide

25  plaintiff with sufficent means of assistance with his vision impairment disability,

26  so as to cause plaintiff to be vulnerable to substantial risks of serious harm,

27  which directly and proximately caused the injuries and damages described below,

28  399. as a direct and proximate result of the negligence of defendants named SUPRA

1    plaintiff was transferred to NCCF, and exposed to several substantial risks of serious

2    harm then on or about 06/15/13 plaintiff was injured by another inmate who was invol-

3    ved in a racial riot, plaintiff was instructed to "lay down" by the officers who

4    responded, and plaintiff was vulnerable to attack by disability and by position,

5    plaintiff was struck in his left eye / eye socket and injured in his health, strength

6    , and activity, sustaining injury to his nervous system and person, all of which inj-

7    uries have caused, and continue to cause, plaintiff great mental, physical, emotional

8    and nervous pain and suffering,

9    400. defendants named SUPRA acted negligently, willfully, and maliciously, and with

10   a reckless and callous disregard for plaintiffs federally protected rights,

11   401. as a result of defendants named SUPRA actions or omissions plaintiff has suffered

12   and will continue to suffer extreme hardship and actual and impending irreparable

13   injury, pain, and emotional distress in that plaintiff required surgery to his left

14   eye due to this injury, plaintiff has lost visual acuety and has reoccuring and con-

15   tinuing issues related to this injury,

16   SEVENTEENTH CAUSE OF ACTION FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

17   402. plaintiff incorperates paragraphs 96 through 108

18   403. on or about 05/13/13 plaintiff was an inmate at Los Angeles County Jail and was

19   in the care of defendant doctor doe 12,

20   404. on or about 05/13/13 at the inmate reception center located in TTCF, plaintiff

21   informed defendant doctor doe 12 that he was vision impaired and therefore required

22   help or assistance from defendant doctor doe 12, plaintiff was vulnerable and had

23   expressed how plaintiff has difficulty with his ability to navigate and walk safely,

24   in responce, defendant doctor doe 12 ignored plaintiffs request for help and denied

25   plaintiff help with his disability,

26   405. defendant doctor doe 12's conduct was negligent and reckless or careless and done

27   for the purpose of defendant doctor doe 12's complaicentcy and lack of care of duty,

28   defendant doctor doe 12's conduct was done with wanton and reckless disregard of the

1   consequences to plaintiff,

2   406, as the proximate result of the acts alleged above, plaintiff suffered fright,

3   worry, grief, and mental anguish and emotional and physical distress because plaintiff

4   felt very afraid of what would happen to him, and sudden and extreme terror about the

5   events in the near future, and sharp sorrow and difficulty or annoyance at the senario

6   and has been injured in mind and body,

7   407. the acts of defendant doctor doe 12 alleged above were negligent, wilful, wanton,

8   malicious, and oppressive and justify the awarding of exemplary and punitive damages.

9   EIGHTEENTH CAUSE OF ACTION FOR INADEQUATE MEDICAL CARE

10  408. plaintiff incorperates paragraphs 122 through 131

11  409. on or about 06/13/13 plaintiff was in custody at Los Angeles County Jail and had

12  a serious medical need because plaintiff is severely nearsighted and was without

13  glasses, causing plaintiff to be legally blind, plaintiff was therefore, placed among

14  the class of persons to whom defendant doctor doe 14 owed a duty as part of a special

15  relationship,

16  410. defendant doctor doe 14 failed to provide plaintiff with care or assistance for

17  plaintiffs vision impairment, although defendant doctor doe 14 had several options

18  that would of provided plaintiff with assistance,

19  411. defendant doctor doe 14 had knowledge of plaintiffs serious medical need because

20  plaintiff had discussed his vision impairment with defendant doctor doe 14, shown in

21  paragraph 124 , then defendant doctor doe 14 evaluated plaintiff and dismissed plaintiff

22  to the waiting area without any explination or assistance, shown in paragraph 128

23  then defendant doctor doe 14 referred plaintiff to see the on-site eye doctor, and

24  forwarded the safety concerns of plaintiff to a custody officer, shown in paragraph

25  131, however, none of defendant doctor doe 14's actions were helpful or assistive to

26  the needs of plaintiff, therefore, defendant doctor doe 14 was deliberately indifferent

27  to plaintiffs serious medical needs,

28

1   412. defendant doctor doe 14's actions or omissions violated plaintiffs right to be

2   free of cruel and unusual punishment guaranteed by the 8th and 14th amendments to the

3   constitution,

4   413. as a direct and proximate result of defendant doctor doe 14's actions or omissions

5   described in this complaint plaintiff was returned back to his dorm in general popula-

6   tion and exposed to several substantial risks of serious harm, then on or about 06/15/13

7   plaintiff was injured during a racial riot in his dorm, plaintiff was vulnerable and

8   was told to lay prone on the ground, when another inmate chose to kick plaintiff in

9   the left eye / eye socket causing plaintiff injury, pain, and distress in that plaintiff

10  required to have surgery on his left eye as a result of defendant doctor doe 14's

11  provision of inadequate medical care,

12  414. defendant doctor doe 14 acted willfully, and maliciously, and with reckless and

13  callous disregard for plaintiff's federally protected rights,

14  415. as a result of defendant doctor doe 14's actions plaintiff has suffered and will

15  continue to suffer extreme hardship and actual and impending irreparable injury, pain

16  and emotional distress in that plaintiff required surgery to his left eye due to this

17  injury, plaintiff has lost visual acuity and has reoccuring and continuing issues

18  related to this injury,

19  NINETEENTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

20  416A plaintiff incorporates paragraphs 122 through 131

21  417A on or about 06/13/13 plaintiff was in custody at Los Angeles County Jail and was

22  an inmate, plaintiff was therefore, placed among the class of persons to whom defendants

23  doctor doe 14, lee baca, david fender, kelley fraser, ray leyva, ralph ornelas, karen

24  dalton, kevin kuykendall owed a duty as part of a special relationship,

25  418A defendants named SUPRA had a duty to use such skill, prudence, and diligence as

26  other members of his or her profession commonly possess and exercise,

27  416B defendants named SUPRA  negligently allowed plaintiff to return to his dorm

28  among general population and failed to provide plaintiff with assistance for his vision

1  impairment , although there were options available to provide plaintiff with

2  assistance for his disability, so as to cause injuries and damages described below,

3  417 Bas a direct and proximate result of the negligence of defendants named SUPRA

4  plaintiff was returned to his dorm in general population without assitance and unable

5  to see properly, and on or about 06/15/13 plaintiff was injured in his left eye / eye

6  socket by an inmate who was involved in a racial riot, plaintiff was vulnerable and

7  unable to prevent injury because plaintiff could not see properly, and wsa hurt in his

8  health, strength, and activity, sustaining injury to his nervous system and person,

9  all of which injuries have caused and continue to cause plaintiff great mental, physical

10 emotional and nervous pain and suffering,

11 418 B defendants named SUPRA acted knowingly, willfully, and maliciously, and with a

12 reckless and callous disregard for plaintiffs federally protected rights.

13 419 B as a result of defendants named SUPRA actions or omissions plaintiff has suffered

14 and will continue to suffer extreme hardship and actual and impending irreparable injury

15 pain, and emotional distress in that plaintiff required surgery to his left eye due to

16 this injury, plaintiff has lost visual acuety and has reoccuring and continuing issues

17 related to this injury.

18 TWENTIETH CAUSE OF ACTION FOR FAILURE TO PROTECT

19 420. plaintiff incorperates paragraphs 136 through 143

20 421. on or about 06/13/13 plaintiff was in custody at Los Angeles County Jail, therefore

21 plaintiff was placed among the class of persons to whom defendant custody assistant doe

22 15 owed a duty as part of a special relationship,

23 422. defendant custody assistant doe 15 was made aware of the safety concerns that

24 plaintiff conveyed to defendant doctor doe 14 during consultation, Defendant custody

25 assistant doe 15 took it upon himself to investigate the safety conserns of plaintiff

26 regarding living in dorm 726 while unable to see, plaintiff answered several questions

27 asked by custody assistant doe 15, shown in paragraph 138 , then plaintiff requested

28 defendant custody assistant doe 15's help to help plaintiff find more suitable housing

1   shown in paragraph 140, then defendant custody assistant doe 15 refused to help

2   plaintiff with his safety conserns and reassured plaintiff that his dorm was fine

3   and asked plaintiff to return to his dorm, shown in paragraphs 141, 142

4   423. plaintiff alleges that defendant custody assistant doe 15 exposed plaintiff to

5   the following substantial risks of serious harm, (1) classification, plaintiff was

6   not classified properly, plaintiff had a vision impairment by meaning of physical dis

7   ability, therefore, plaintiff was placed at risk in general, (2) plaintiff was vulnerable

8   because plaintiff could not see properly, and therefore, was an obvious target for

9   potential abuse by other stronger aggressive inmates, (3) inmate-on-inmate violence

10   was common and uncontrolled and was an obvious and pervasive risk with long standing

11   history at the jail, (4) overcrowding, due to AB 109 the jail was at a constant max

12   capacity or over capacity, therefore causing excessive risk of violence, (5) understa-

13   ffing , the jail was not staffed with enough guards to provide adequate safety,

14   (6) insufficient inspections, guards often failed to conduct sufficent inspections to

15   provide inmate safety, (7) state of nature, guards lack of supervision often allowed

16   inmates to exercise too much control over other inmates, causing a state of nature were

17   everyone runs wild, (8) attacker was unusually dangerous, plaintiff was placed into a

18   dorm with several dangerous and violent inmates who posed significant risks, (9)

19   officers encouraged attack, several officers would intentionally walk away or leave

20   their posts and notify inmates that they would be gone for several minutes leaving

21   inmates to fend for themselves,

22   424. defendant custody assistant doe 15 knew that plaintiff had a vision impairment

23   , shown in paragraph 139 , and knew that plaintiff was vulnerable by statements made

24   by plaintiff, shown in paragraph 139, defendant custody assistant doe 15 knew that there

25   was a high rate of inmate-on-inmate violence at the jail, and knew that the jail was

26   constantly overcrowded, and constantly understaffed with guards, defendant custody

27   assistant 15 knew that guards were not performing sufficent inspections and knew that

28   inmates were controling other inmates often, and that inmates in the dorm were dangerous

1   defendant custody assistant doe 15 knew that officers would often intentionally leave

2   their post and allow inmates to conduct acts of violence and punishment to other inmates

3   425. defendant custody assistant doe 15 failed to prevent any of the risks mentioned

4   above, and failed to respond reasonably to plaintiff's safety concerns or abate the

5   substantial risk of serious harm, posed to caused plaintiff injury or damage,

6   426. as the proximate and direct result of defendant custody assistant doe 15's actions

7   and omissions, plaintiff was sent back to live in his dorm and exposed to several

8   substantial risks of serious harm, then plaintiff was injured on or about 06/15/13

9   when plaintiff was vulnerable and laying on the ground as officers had told him to

10  because several inmates were fighting during a racial riot, plaintiff was kicked in the

11  left eye / eye socket and caused injury , pain and disress,

12  427. defendant custody assistant doe 15 acted knowingly, willfully, and mailiciously,

13  and with reckless and callous disregard for plaintiffs federally protected rights,

14  428. as a result of defendant custody assistant doe 15's actions or omissions plaintiff

15  has suffered and will continue to suffer extreme hardship and actual and impending

16  irreparable injury, pain, and emotional distress in that plaintiff required surgery on

17  his left eye due to this injury, plaintiff has lost visual acuety and has reoccuring

18  and continuing issues related to this injury,

19  TWENTY FIRST CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

20  429. plaintiff incorperates paragraphs 136 through 143

21  430. on or about 06/13/13 plaintiff was in custody at Los Angeles County Jail and was

22  an inmate, plaintiff was therefore, placed among the class of persons to whom defendants

23  custody assistant doe 15, lee baca, paul tanaka, and terri mcdonald owed a duty as

24  part of a special relationship,

25  431. defendants named SUPRA , had a duty to use such skill, prudence, and diligence

26  as other members of his or her profession commonly possess and exercise,

27  432. defendants named SUPRA negligently allowed plaintiff to return to his dorm while

28  his vision was impaired and exposed plaintiff to several substantial risks of serious

1  harm, and failed to provide plaintiff with assistance in maintining plaintiffs safety

2  defendants named SUPRA negligently refused to assist plaintiff with his vision problem

3  so as to cause plaintiff to be exposed to dangerous circumstances where a racial riot

4  began and plaintiff was vulnerable, and plaintiff was injured on or about 06/14/13 by

5  another inmate who kicked plaintiff in the eye / eye socket and caused injury, pain ,

6  and emotional distress,

7  433. as a direct and proximate result of the negligence of defendants named SUPRA,

8  plaintiff was kicked in his left eye / eye socket and injured in his health, strength

9  and activity, sustaining injury to his nervous system and person, all of which injuries

10  have caused and continue to cause plaintiff great mental physical, emotional, and ner

11  vous pain and suffering,

12  434. defendants named SUPRA acted negligently, willfully, and maliciously, and with

13  reckless and callous disregard for plaintiffs federally protected rights,

14  435. as a result of defendants named SUPRA actions or omissions, plaintiff has

15  suffered and will continue to suffer extreme hardship and actual and impending

16  irreparable injury, pain, and emotional disterss in that plaintiff required surgery to

17  his left eye due to this injury, plaintiff has lost visual acuety and has reoccuring

18  and continuing issues related to this injury,

19  TWENTY-SECOND CAUSE OF ACTION FOR FAILURE TO PROTECT (10 counts)

20  436. plaintiff incorperates paragraphs 143 through 153

21  437. on or about 06/15/13 plaintiff was in custody at Los Angeles County Jail, therefore

22  plaintiff was placed among the class of persons to whom defendants officers doe 16

23  through 26 owed a duty as part of a special relationship,

24  438. defendants officers doe 16 through 26 responded to the fighting during a racial

25  riot, then carelessly began to shout through the bars or gate located near the door

26  to dorm 726, each officer shouted such phrases like "lay down" and "lay down now" and

27  "get down" and "get down on the ground now" , and plaintiff responded by laying down

28  prone on the floor while other inmates either kept fighting or layed down prone also,

therefore, plaintiff was placed in a vulnerable position because (1) plaintiff was supceptible to attack while laying prone, and (2) plaintiff was unable to see due to his vision impairment disability and unable to mitigate any threat or attack posed to cause him harm, defendants officers doe 16 through 26 failed to safely intervene in the fighting, although they had several options and methods to use that would of intervened safely, and they had the training and knowledge to safely intervene in racial rioting without causing inmates to suffer unnecessary risk or injury,

439. plaintiff alleges that defendants officers doe 16 through doe 26 exposed plaintiff to the following substantial risks of serious harm, (1) improper classification, plaintiff was vision impaired, by meaning of physical disability, and therefore was placed at general risks of injury, (2) plaintiff was vulnerable, plaintiff could not see properly, therefore plaintiff wasan obvious target for potential abuse by stronger and more aggressive inmates, (3) high rate of violence, inmate-on-inmate violence was common and uncontrolled and was an obvious and pervasive risk with long standing history at the jail, overcrowding, due to AB 109 the jail was at a constant max capacity, inmates who normally would be in prisons were in jail, causing excessive risk (5) understaffing, the jail was often not staffed with enough guards to provide adequate safety, (6) insuffecent inspections, guards often failed to make sufficent inspections of inmate living areas, (7) state of nature, guards lack of supervision often allowed inmates to exercise too much control over other inmates, creating a state of nature where everyone runs wild, (8) attacker was unusually dangerous, plaintiff was placed into a dorm with several known violent and dangerous inmates who acted aggressive and had a history of exercising control over other inmates, (9) officials encouraged attack, plaintiff was told to laydown during obvious fighting and clear and present danger, therefore putting plaintiff at extended risk intentionaly

440. defendants officers doe 16 through doe 26 knew or had reason to know that plaintiff was vision impaired because plaintiff had made it clear to officers at a previous time who worked in the same housing area, and because officers often exchanged information

1   and gossiped, or exchanged reports and or reviewed other officers reports, and also

2   knew that plaintiff was vulnerable, or had reason to know plaintiff was vulnerable,

3   defendants officers doe 16 through doe 26 also knew that there was a high rate of

4   inmate-on-inmate violence at the jail, and knew that the jail was in a state of

5   overcrowding, defendants officers doe 16 through doe 26 knew that the jail was often

6   understaffed and that guards often failed to conduct sufficent inspections of inmate

7   living areas, and also knew that inmates would often exercise control over other inmates

8   defendants officers doe 16 through doe 26 knew that several dangerous inmates were

9   rioting in dorm 726 and knew that their own conduct may cause risk or injury to a inmate

10  441. defendants officers doe 16 through doe 26 failed to respond to the substantial

11  risks of serious harm alleged above and failed to abate the risks of injury to plaintiff

12  defendants officers doe 16 through doe 26 could of used other methods to stop the fight

13  ing that was happening in dorm 726 before placing plaintiff in danger of injury,

14  442. as a proximate and direct result of defendants officers doe 16 through doe 26's

15  actions or omissions plaintiff was kicked in his left eye / eye socket and sustained

16  injury, pain, and distress,

17  443. defendants officers doe 16 through doe 26 acted knowingly, willfully, and malicio-

18  usly, and with reckless and callous disregard for plaintiffs federally protected rights

19  444. as a result of defendants officers doe 16 through 26's actions or omissions

20  plaintiff has suffered and will continue to suffer extreme hardship and actual and

21  impending irreparable injury, pain, and emotional distress in that plaintiff required

22  surgery to his left eye due to this injury, plaintiff has lost visual acuety and has

23  reoccuring and continuing issues related to this injury,

24  TWENTY_THIRD CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

25  445. plaintiff incorperates paragraphs 143 through 153

26  446. on or about 06/15/13 plaintiff was in custody at Los Angeles County Jail and was

27  an inmate, plaintiff was therefore, placed among the class of persons to whom defendants

28  officers doe 16 through doe 26, lee baca, paul tanaka, and terri mcdonald owed a duty

1    as part of a special relationship,

2    447. defendants named SUPRA, had a duty to use such skill, prudence, and diligence as

3    other members of his or her profession commonly possess and exercise,

4    448. defendants named SUPRA negligently failed to intervene in the fighting that took

5    place in dorm 726 during a racial riot, and negligently placed plaintiff into a state

6    of vulnerability by asking him to lay down prone while other inmates were fighting

7    near by , so as to cvause plaintiff to be vulnerable to attack or injury and directly

8    and proximately caused the injuries and damages described below,

9    449. as a direct and proximate result of the negligence of defendants named SUPRA's

10    plaintiff was kicked in the left eye / eye socket by an inmate who was fighting near

11    by then plaintiff was injured in his health, strength, and activity, sustaining injury

12    to his nervous system and person, all of which injuries have caused, and continue to

13    cause plaintiff great mental, physical, emotional, and nervous pain and suffering,

14    450. defendants named SUPRA acted knowingly, willfully, and maliciously, and with a

15    reckless and callous disregard for plaintiffs federally protected rights,

16    451. as a result of defendants named SUPRA actions or omissions plaintiff has suffered

17    and will continue to suffer extreme hardship and actual and impending irreparable

18    injury, pain, and emotional distress in that plaintiff required surgery to his left

19    eye due to this injury, plaintiff has lost visual acuety and has reoccuring and

20    continuing issues related to this injury,

21    TWENTY-FOURTH CAUSE OF ACTION FOR INADEQUATE MEDICAL CARE

22    452. plaintiff incorporates paragraphs 153 through 162

23    453. on or about 06/15/13 plaintiff was in custody at Los Angeles County Jail and had

24    a serious medical need because plaintiff had been kicked in the eye/ eye socket and

25    plaintiff was injured in his left eye, therefore, plaintiff was placed among the class

26    of persons to whom defendant nurse doe 27 owed a duty as part of a special relationship

27    454. defendant nurse doe 27 failed to provide adequate medical care for plaintiff's

28    left eye injury, because plaintiff has internal eye injuries and other injuries,

455. plaintiff had been kicked in the left eye / eye socket by an inmate during a racial riot, plaintiff explained that he was injured in his left eye and that it was bleeding a little bit but it stopped bleeding, shown in paragraph 157,

456. plaintiff showed the bloody tissue to defendant nurse doe 27 and defendant nurse doe 27 told plaintiff that it was probably just a scratch, shown in paragraphs 157,158

457. plaintiff was treated for swelling, however, plaintiff was not treated or refered to a specialist for his eye injuries, although there were several options of care that defendant nurse doe 27 could of used to provide some form of care for plaintiffs left eye injuries,

458. defendant nurse doe 27 had knowledge of plaintiff's injuries and knew that his left eye had been bleeding, therefore, defendant nurse doe 27 was deliberately indifferent to plaintiffs serious medical needs,

459. defendant nurse doe 27's actions or omissions violated plaintiffs right to be free of cruel and unusual punishment, guaranteed by the 8th and 14th amendments to the constitution,

460. as a direct and proximate result of defendants actions or omissions, described in this complaint plaintiffs left eye injuries went untreated for approximately 10 days and plaintiffs injuries worsened as plaintiffs retina detatched further and plaintiff suffered injury, pain, and emotional distress in that plaintiff required surgery to his left eye, however, plaintiffs left eye condition worsened until he met with the on-site eye care doctor at NCCF,   as a result of defendant nurse doe 27's carelessness

461. defendant nurse doe 27 acted knowingly, willfully, and maliciously, and with a reckless and callous disregard for plaintiffs federally protected rights,

462. as a result of defendant nurse doe 27's actions or omissions plaintiff suffered and will continue to suffer extreme hardship and actual and impending irreparable injury, pain, and emotional distress in that plaintiff was not treated properly,

TWENTY-FIFTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

463. plaintiff incorperates paragraphs 153 through 162

1  464. on or about 06/15/13 plaintiff was in custody at Los Angeles County Jail and was

2  an inmate, plaintiff was therefore, placed among the class of persons to whom defendant

3  nurse doe 27, lee baca, david fender, kelley fraser, ray leyva, ralph ornelas, karen

4  dalton, kevin kuykendall owed a duty as part of a special relationship,

5  465. defendants named SUPRA, had a duty to use such skill, prudence, and diligence as

6  other members of his or her profession commonly possess and exercise,

7  466. defendants named SUPRA negligently failed to provide plaintiff with proper medical

8  care for his left eye injuries sustained because plaintiff was kicked in the eye /

9  eye socket by another inmate who was involved in fighting during a riot in dorm 726

10  defendants named SUPRA knew that plaintiff was injured in his eye area and failed to

11  provide sufficent treatment or refer treatment to a specialist, therefore, plaintiffs

12  eye injuries went untreated until plaintiff was seen by the on site eye care doctor

13  approximately 10 days later, which happened to be an appointment to meet with the

14  on-site eye care doctor, not a referral to the eye care doctor for eye injuries,

15  467. as a direct and proximate result of the negligence of defendants named SUPRA

16  plaintiffs injuries to his left eye went undiagnosed and untreated for approximately

17  10 days while plaintiffs eye condition worsened, plaintiff required surgery on his left

18  eye and was hurt and injured in his health, strength, and activity, sustaining injury

19  to his nervous system and person, all of which injuries have caused and continue to

20  cause plaintiff great mental, physical, emotional, and nervous pain and suffering,

21  468. defendants named SUPRA acted knowingly, willfully, and maliciously, and with a

22  reckless and callous disregard for plaintiffs federally protected rights,

23  469. as a result of defendants named SUPRA actions or omissions plaintiff has suffered

24  and will continue to suffer extreme hardship and actual and impending irreparable

25  injury, pain, and emotional distress in that plaintiff required surgery to his left

26  eye and plaintiffs condition deteriorated or worsened over time,

27  TWENTY-SIXTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

28  470. plaintiff incorperates paragraphs 201 through 211

471. on or about 12/25/13 plaintiff was in custody at Los Angeles County Jail and was an inmate, plaintiff was therefore, placed among the class of persons to whom defendants chaplains doe 33 and doe 34, lee baca, terri mcdonald owed a duty as part of a special relationship,

472. defendants named SUPRA had a duty to use such skill, prudence, and diligence as other members of his or her profession commonly possess and exercise,

473. defendants named SUPRA negligently came to visit plaintiff and failed to use the pass or ducat system where plaintiff would recieve a printed pass and then plaintiff would walk to a destination specified on the pass, for various purposes including meetings between chaplains and inmates, and negligently chose to ask the officer on duty at the control booth for dorms 5800 - 5900, to request that plaintiff come to the hallway and meet with defendants chaplains doe 33 and doe 34, plaintiffs religious status and privleged information was easily eavesdropped upon by inmates who had ill motives towards plaintiffs religious status and practices, therefore, plaintiff was unknowingly exposed along with his religious status and his privleged information to several anti-semetic gang members known as skin heads, because of defendants chaplains doe 33 and doe 34's actions or omissions, so as to cause plaintiff to be targeted by anti-semetic gang members and directly and proximately caused the injuries and damages described below,

474. as a direct and proximate result of the negligence of defendants named SUPRA plaintiff was targeted by daangerous inmates who followed the ideals of anti-semitism and were part of skin head gangs such as arayan brotherhood and peckerwoods and p9 then plaintiff was brutally beaten on or about 12/31/13 by those same skin heads and plaintiff was severely injured in his face, eyes, nose and was hurt and injured in his health, strength, and activity, sustaining injury to his nervous system and person all of which injuries have caused and continue to cause plaintiff great mental, physical , emotional, and nervous pain and suffering,

475. defendants named SUPRA acted negligently, willfully, and maliciously, and with a

reckless and callous disregard for plaintiffs federally protected rights,

476. as a result of defendants named SUPRA actions or omissions plaintiff has suffered

and will continue to suffer extreme hardship and actual and impending irreparable

injury, pain, and emotional distress in that plaintiff required surgery to his face

and right eye due to this injury, plaintiff has vision complications and has reoccuring

and continuing issues related to this injury,

TWENTY-SEVENTH CAUSE OF ACTION FOR FAILURE TO PROTECT

477. plaintiff incorporates paragraphs 201 through 206

478. on or about 12/25/13 plaintiff was in custody at Los Angeles County Jail and was

therefore, placed among the class of persons to whom defendant officer doe 35 owed a

duty as part of a special relationship,

479. defendant officer doe 35 failed to follow procedures set in place to protect

the privleged and confidential information of inmates, defendant officer doe 35 chose

to listen to defendants chaplains doe 33 and doe 34 when they had requested that

plaintiff be made available, defendant officer doe 35 chose to carelessly tell another

third party inmate to go get the plaintiff, and then voluteered privleged or confiden-

tial information to that third party inmate by telling him that there was some jewish

people waiting to meet with plaintiff in the hallway just outside dorm 5800,

therefore, defendant officer doe 35 exposed plaintiff's private, privleged, and confi-

dential information to anti-semetic gang members who were hostile and dangerous toward

jewish people in general, defendant officer doe 35 failed to protect plaintiff by

failing to conduct himself appropiately and by failing to follow procedures,

480. plaintiff alleges that defendant officer doe 35 exposed plaintiff to the following

substantial risks of serious harm, (1) classification, plaintiff was a medical post

operative inmate who was recovering from surgerys and still required medications and

was placed among several other classes of inmates not related to medical needs and

was placed at a risk in general, (2) plaintiff was vulnerable, and other inmates could

easily pick on or harrass plaintiff, and plaintiff was a target for stronger inmates,

1   (3) there was a high amount of inmate-on-inmate violence at the jail and this was an

2   obvious and pervasive risk with long standing history at the jail, (4) overcrowding,

3   the jail was over crowded due to AB 109 where inmates that would normally be in prison

4   were kept in dorms such as 5800, creating excessive risks, (5) understaffing, there

5   was not enough guards to safely monitor both dorms 5800 and 5900 so one guard would

6   watch both areas, although they were on opposite ends of the control booth, (6) there

7   were insufficent inspections in the inmate living areas, (7) state of nature, inmates

8   often were exercising too much control over other inmates and over the communications

9   between the control booth and other inmates, creating a state of nature were everyone

10  runs wild, (8) attackers were unusually dangerous, the inmates who discovered plaintiff

11  was jewish then informed anti-semetic gang members who were hostile and violent toward

12  jewish people in general, creating dangerous circumstances for plaintiff and causing

13  substantial risk of serious harm, (9) official encouraged, defendant officer doe 35

14  acted in a careless and reckless manner with plaintiff's information and therefore,

15  through his own conduct assisted and aided the anti-semetic gang members in finding a

16  target for which they would later brutally assault and injure while they became utterly

17  intoxicated and commited acts of malicious and sadistic intent upon plaintiff,

18  481. defendant officer doe 35 knew that plaintiff was a post operative inmate who was

19  recovering from surgery and treatment, and knew that plaintiff was vulnerable to injury

20  defendant officer doe 35 also knew that there was a high rate of inmate-on-inmate

21  violence at the jail, and knew that the jail was overcrowded, defendant officer doe 35

22  knew that the jail was understaffed and knew that there were insufficent inspections,

23  and knew that inmates often exercised too much control over other inmates and over the

24  communications to and from the control booth in dorm 5800 and abroad, defendant officer

25  doe 35 also knew that many inmates in dorm 5800 were potentially dangerous and that if

26  unchecked would cause violence between inmates, and knew that thier own conduct was

27  questionable, and often was not in compliance with procedures set in place to maintain

28  order and safety for other inmates as well as officers who work at the jail,

482. defendant officer doe 35 did not respond reasonably to the substantial risks of
serious harm stated above, and failed to abate risks to plaintiff while dealing with
plaintiff's information, and while performing his duties toward plaintiff and infact
defendant officer doe 35's actions increased risk of danger and injury to plaintiff,

483. as a proximate and direct result of defendant officer doe 35's  actions or omission
plaintiff was exposed to anti-semetic inmates known as skin heads who operate as gangs
and often target jewish people for acts of violence and sadistic , evil , and malicious
acts, then plaintiff was subjected to mistreatment for approximately 5 days and forced
to perform chores and other duties with no compensation, then plaintiff was the victim
of a brutal display of violence when several skin heads became drunk on home made wine
and savagely attacked plaintiff, causing plaintiff to suffer serious injury, pain, and
distress, plaintiffs left eye socket, nose and right eye were damaged, along with other
damages to plaintiff,

484. defendant officer doe 35 acted knowingly, willfully, and maliciously, and with a
reckless and callous disregard for plaintiffs federally protected rights,

485. as a result of defendant officer doe 35's actions or omissions plaintiff has suff-
ered and will continue to suffer extreme hardship and actual and impending irreparable
injury, pain, and emotional distress in that plaintiff required surgery to his left
eye socket, face, and right eye due to this injury, plaintiff has lost visual acuety
and has vision complications that are extensive and reoccuring and continuing that cause
issues to plaintiff related to this injury,

TWENTY-EIGHTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

486. plaintiff incorperates paragraphs 201 through 206

487. on or about 12/25/13 plaintiff was in custody at Los Angeles County Jail and was
an inmate, plaintiff was therefore, placed among the class of persons tho whom defendant
officer doe 35, lee baca, terri mcdonald owed a duty as part of a special relationship,

488. defendants named SUPRA had a duty to use such skill, prudence, and diligence as
other members of his or her profession commonly possess and exercise,

489. defendants named SUPRA negligently dealt with plaintiffs information and

then caused anti-semetic gang members known as skin heads to discover that

plaintiff was jewish, defendants named SUPRA acted carelessly in dealing with

plaintiff and the circumstances sourrounding plaintiff, so as to cause the creation

of danger and substantial risk of serious harm to the plaintiff, and directly

and proximately caused the injuries and damages described below,

490. as the proximate and direct result of the negligence of defendants named

SUPRA plaintiff was violently attacked by intoxicated skin heads on or about

12/31/13 plaintiff sustained injuries to his left eye socket , face, and right eye

and was hurt and injured in his health, strength, and activity, sustaining injury

to his nervous system and person, all of which injuries have caused and continue

to cause plaintiff great mental, physical, emotional and nervous pain and suffering

491. defendants named SUPRA acted knowingly, willfully, and maliciously, and with

a reckless and callous disregard for plaintiffs federally protected rights,

492. as a result of defendants named SUPRA actions or omissions plaintiff has

suffered and will continue to suffer extreme hardship and actual and impending

irreparable injury, pain, and emotional distress in that plaintiff required

surgery to his left eye socket, face, and right eye due to this injury, plaintiff

has lost visual acuety and has complications that affect his vision, and has

reoccuring and continuing issues related to this injury,

TWENTY-NINETH CAUSE OF ACTION FOR FAILURE TO PROTECT

493. plaintiff incorperates paragraphs 212 through 217

494. on or about 12/26/13 plaintiff was in custody at Los Angeles County Jail

therefore, plaintiff was placed among the class of persons to whom defendants

officer doe 36 owed a duty as part of a special relationship,

495. defendant officer doe 36 carelessly allowed other inmates to force plaintiff

to move to another bed, and allowed other inmates to control communications to

and from the control booth, therefore, plaintiff could not complain about his bed

1  therefore, plaintiff was forced to move his bed and also forced to perform chores
2  and plaintiff had no recourse to complain or request intervention of officials,
3  defendant officer doe 36 was oblivious to the fact that plaintiff was forced to
4  move to another bed and was oblivious to the fact that plaintiff was being forced
5  to perform labor in the form of sweeping, mopping, and trash without compensation
6  for his work, which is standard for any inmate porter or trustee,
7  496. plaintiff alleges that officer doe 36 exposed plaintiff to the following
8  substantial risks of serious harm, (1) classification, plaintiff was a post op-
9  erative medical inmate who was recovering from surgery and treatments and was
10  still receiveing care and medications and should not have been grouped into the
11  same living area as violent or transitional inmates who were more aggressive,
12  (2) plaintiff was unusually vulnerable, plaintiff was not able to stand up aga-
13  inst several inmates who were demanding he move to anther bed, and officers
14  were not helpful to assist plaintiff in keeping his bed, (3) high rate of inmate
15  on inmate violence was a clear and pervasive risk with long standing history,
16  (4) the jail was overcrowded due to AB 109 which kept inmates in jail rather
17  than prison, and caused excessive risks, (5) understaffing, the jail was under
18  staffed and there was only one guard in the control booth for 5800 and 5900 both
19  (6) guards failed to conduct sufficent inspections of inmate living areas and
20  (7) state of nature, guards lack of supervision often allowed inmates to exercise
21  too much control over other inmates and over the communications to and from the
22  control booths in 5800 and abroad, (8) inmates were unusually aggressive and
23  were obviously making their own rules to which went unchecked by officials,
24  (9) officials own conduct was ignorant of the ongoings and innerworkings of
25  the very living areas that they were assigned to monitor, causing several risks
26  497. defendant officer doe 36 knew that plaintiff was a medical inmate with
27  medically related issues and knew that plaintiff was vulnerable to be targeted
28  by other stronger and more aggressive inmates , and knew inmate violence was high

1   and common and uncontrolled at the jail, defendant officer doe 36 knew that the

2   jail was overcrowded and always at high capacity of inmates, and knew that the

3   jail was understaffed in some areas such as 5800, defendant officer doe 36 knew

4   that officers failed to perform sufficent inspections of inmate living areas

5   and knew that inmates would often exercise too much control over other inmates

6   and over the communications to and from the officers, and knew that there were

7   a large number of potentially dangerous inmates in the living area with plaintiff

8   defendant officer doe 36 knew that his own conduct was not sufficent enough to

9   maintian safety in the dorm and was unable to make the necessary changes to

10   provide inmates with sufficent safety,

11   498. defendant officer doe 36 failed to respond to the substantial risks of

12   serious harm aleeged above, and failed to abate any risks posed to cause plaintiff

13   substantial injuries or serious injuries, in fact defendant officer doe 36's

14   conduct was complaicent and ignorant to any risks and overlooked any risks as

15   beyond the scope of his duties, when in fact it was his duty to abate risks,

16   which he ignored completely and carelessly,

17   499. as the direct and proximate result of defendant officer doe 36's actions

18   or omissions, plaintiff was forced to move to another part of the dorm, and

19   forced to live on the most undesireable bed in the dorm, plaintiff was also

20   forced to perform manual labor in the form of sweeping, mopping, and tending

21   to trash all without compensation that is standard for any jail porter or trustee

22   plaintiff was subjected to these conditions or face physical violence from

23   several inmates, and defendant officer doe 36 was ignorant to any of the activi

24   ties that had taken place, defendant officer doe 36 was aware that inmates were

25   being restricted in communicating to and from the control booth and defendant

26   officer doe 36 did not do anything to prevent it, ulltimately plaintiff was

27   later on subjected to violence at the hands of anti-semetic inmates who had

28   learned plaintiff was jewish then began to manipulate plaintiff as shown above

1  500. defendant officer doe 36 acted willfully, knowingly, and maliciously, and

2  with reckless and callous disregard for plaintiffs federally protected rights,

3  501. as a result of defendant officer doe 36's actions or omissions plaintiff

4  has suffered and will continue to suffer extreme hardship and actual and impend-

5  ing irreparable injury, pain, and emotional distress in that plaintiff would be

6  set up for a savage attack later on or about 12/31/13 then plaintiff was seriously

7  injured in his left eye socket, his face, and his right eye, and plaintiff required

8  surgery on his left eye socket, face, and right eye also due to this injury,

9  plaintiff has lost visual acuety and has vision issues and complications that

10  are reoccuring and continuing related to this injury,

11  THIRTYTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

12  502. plaintiff incorperates paragraphs 212 through 217

13  503. on or about 12/26/13 plaintiff was in custody at Los Angeles County Jail

14  and was an inmate, plaintiff was therefore, placed among the class of persons

15  to whom defendants officer doe 36, lee baca, terri mcdonald owed a duty as part

16  of a special relationship,

17  504. defendants named SUPRA had a duty to use such skill, prudence, and diligence

18  as other members of his or her profession commonly possess and exercise,

19  505. defendants named SUPRA negligently allowed inmates to restrict and prevent

20  communications to and from the control booth and therefore, plaintiff was unable

21  to complain when several inmates forced plaintiff to move to another bed and

22  forced plaintiff to perform manual labor such as sweeping, mopping, and tend to

23  the trash without any compensation for his work, although jail porters and trus

24  tees often and commonly receive some form of commpensation for labor, then

25  plaintiff was manipulated into living in an area that was the least desireable

26  bed in the dorm and then plaintiff was set up for a viscious assult by intoxicated

27  inmates who had learned plaintiff was jewish and had plotted to make plaintiff

28  their subject of abuse when plaintiff was attacked on or about 12/31/13 then

1  plaintiff was injured in his left eye socket, face, and right eye, then suffered

2  506. as a direct and proximate result of the negligence of defendants named SUPRA

3  plaintiff was injured in his left eye socket, face, and right eye, and was hurt

4  and injured in his health, strength, and activity, sustaining injury to his

5  nervous system and person, all of which injuries have caused, and continue to

6  cause plaintiff great mental, physical, emotional, and nervous pain and suffering

7  507. defendants named SUPRA acted negligently, willfully, and maliciously, and

8  with a reckless and callous disregard for plaintiffs federally protected rights,

9  508. as a result of defendants named SUPRA action or omissions, plaintiff has

10  suffered and will continue to suffer extreme hardship and actual and impending

11  irreparable injury, pain, and emotional distress in that plaintiff was attacked

12  beaten and innjured in his left eye socket, face, and right eye, then required

13  surgery on his left eye socket, face, and right eye due to this injury and the

14  plaintiff has lost visual acuety and has vison issues and complications that

15  are reoccuring and continueing related to this injury,

16  THIRTY-FIRST CAUSE OF ACTION FOR FAILURE TO PROTECT

17  509. plaintiff incorporates paragraphs 219 through 236

18  510. on or about 12/31/13 plaintiff was in custody at Los Angeles County Jail,

19  therefore, plaintiff was placed among the class of persons to whom defendant

20  officer doe 37 owed a duty as part of a special relationship,

21  511. defendant officer doe 37 was on duty inside the control booth and his

22  primary responsibilities were to watch dorm 5800 and 5900 and monitor inmate

23  activities in both dorms, and also conduct various other tasks related to inmates

24  and the needs of inmates, defendant officer doe 37 was oblivious to the fact .

25  that plaintiff had been attacked by other inmates or that plaintiff required

26  emergency medical attention, therefore, defendant officer doe 37 was careless

27  or reckless in his duties toward plaintiff and failed to provide plaintiff safety,

28

512. plaintiff alleges that defendant officer doe 37 exposed plaintiff to the
following forms of substantial risk of serious harm, (1) classification, plaintiff
was not classified properly and was a medical inmate recovering from surgery's
and was placed among various other classes of inmates whom posed significant risks
(2) plaintiff was vulnerable, plaintiff was weaker and a potential target for
abuse by other inmates, therefore placed at risk, (3) high rate of violence, the
jail was at a constant high rate of inmate-on-inmate violence which was a obvious
and pervasive risk with long standing history at the jail, (4) overcrowding,
due to AB109 the jail was at a constant high volume of inmates who would normally
be in prisons, causing excessive risk, (5) the jail was understaffed and officers
often had to cover double the areas or double the duties of normal officers
(6)Insufficient inspections, officers failed to conduct frequent enough inspections
of inmate living areas, causing risks, (7) state of nature, guards lack of super-
vision often allowed inmates to exercise too much control over other inmates and
over communications to and from the control booth, (8) attackers were unusually
dangerous, plaintiff was exposed as being a jewish man of white ethnicity and
plaintiff was targeted by anti-semetic white supremacist gang members who were
living in the dorm, but had not made their intentions or beliefs known to all,
(9) officials own conduct encouraged attack, plaintiff observed several points
throughout the day were officials would carelessly allow other inmates to obtain
materials to use to create home brewed alcohol, which are normally strictly
not allowed, and often officers would conduct searches for those particular
items, and other contraband, which officials failed to perform such searches,
513. defendant officer doe 37 failed to respond reasonably to the substantial
risks of serious harm stated above, and failed to abate said risk in many aspects
which would of prevented those same risks from presenting a dangerous circumstance
from occuring, and prevented unnecessary events from occuring to lead to plaint
iffs injury on or about 12/31/13

514. defendant officer doe 37 knew that plaintiff was classified as medical and

knew that plaintiff was vulnerable and weaker than many other inmates, defendant

officer doe 37 knew that there was a high rate of violence between inmates at

the jail, and knew that the jail was constantly over crowded, and knew that the

jail was understaffed and that officers did not perform sufficent inspections,

defendant officer doe 37 knew that inmates often exercised too much control over

other inmates and too much control over communications to and from the officers

defendant officer doe 37 also knew that there were dangerous inmates living in

the dorm with plaintiff, and knew that there were more than permitted materials

being used in the dorm to create alcohol and other contraband,

515. as the proximate and direct result of defendant officer doe 37's actions

or omissions plaintiff was targeted by anti-semetic white supremacist gang mem-

bers known as skin heads who collectivly hid their intentions to mistreat and

harm plaintiff, then plaintiff was attacked by several intoxicated inmates on

or about 12/31/13 when plaintiff was resting on a bed because he was sick with

a cold, and therefore was weak and helpless to defend against attack from others

plaintiff sustained several serious injuries to his eyes , face, nose and then

plaintiff was forced to stay inside the shower room laying in blood and in need

of medical attention, however, defendant officer doe 37 was oblivious that any

one was injured or that any meele had occured in the dorm, defendant officer

doe 37 was careless and ignorant to his duty to monitor the dorm for safety,

plaintiff suffered injury, pain, and distress in his mind and body,

516. defendant officer doe 37 acted knowingly, willfully, and maliciously, and

with reckless and callous disregard for plaintiffs federally protected rights.

517. as a result of defendant officer doe 37's actions or omissions plaintiff

has suffered and will continue to suffer extreme hardship and actual and impending

irreparable injury, pain, and emotional distress in that plaintiff required

surgery to his left eye socket, face, right eye due to this injury, plaintiff

1  has lost visual acuety and has reoccuring and continuing issues related to this

2  injury, and other health issues and complications stemming from this injury and

3  the folloing surgerys,

4  THIRTY-SECOND CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

5  518. plaintiff incorperates paragraphs 219 through 236

6  519. on or about 12/31/13 plaintiff was in custody at Los Angeles County Jail

7  and was an inmate, plaintiff was therefore, placed among the class of persons

8  to whom defendants officer doe 37, lee baca, terri mcdonald owed a duty as part

9  of a special relationship,

10  520. defendants named SUPRA had a duty to use such skill, prudence, and diligence

11  as other members of his or her profession commonly possess and exercise,

12  521. defendants named SUPRA negligently failed to observe dorm 5800 for inmate

13  activity and safety and plaintiff was beaten severely while defendant officer

14  doe 37 was oblivious to the serious medical needs and safety of plaintiff, def-

15  endants named SUPRA also negligently allowed inmates to obtain and use materials

16  and ingredients to produce alcohol, dangerous inmates then became intoxicated

17  and defendants named SUPRA failed to use their training and measures or tactics

18  already present at the jail and in possession of defendants to abate risks

19  and remove contraband and intoxicated persons from the dorm before plaintiff

20  was injured on or about 12/31/13, plaintiff suffered multiple serious injuries

21  that could have easily been avioded if defendants named SUPRA had used care and

22  acted where necessary to deter any substantial risk of serious injury, defenda-

23  nts named SUPRA also failed to summon medical care within a reasonable amount

24  of time, and plaintiff suffered injury, pain, and distress,

25  522. as a direct and proximate result of the negligence of defendants named SUPRA

26  plaintiff was severely beaten and punched or kicked in the face and eyes and head

27  multiple times until plaintiff lost consiousness, plaintiff awoke in a pool of

28  blood, eyes swollen and in severe pain and was hurt and injured in his health

1   dtrength, and activity, sustaining injury to his nervous system and person, all

2   of which injuries have caused, and continue to cause, plaintiff great mental

3   physical, emotional, and nervous pain and suffering,

4   523. defendants named SUPRA acted negligently, willfully, and maliciously, and

5   with a reckless and callous disregard for plaintiffs federally protected rights

6   524. as a result of defendants named SUPRA actions or omissions, plaintiff has

7   suffered and will continue to suffer extreme hardship and actual and impending

8   irreparable injury, pain, and emotional distress in that plaintiff required

9   surgery to his eye socket/ face/ and right eye due to this injury, plaintiff

10  has lost visual acuety and has reoccuring and continuing issues related to this

11  injury, and other health issues and complications stemming from this injury and

12  the following surgerys,

13  THIRTY-THIRD CAUSE OF ACTION FOR DENYING,INTERFERING,DELAYING MEDICAL TREATMENT

14  525. plaintiff incorperates paragraphs 258 through 271

15  526. on or about 04/25/14 plaintiff was in custody at Los Angeles County Jail

16  or Los Angeles County Medical Center, and had a serious medical need because

17  plaintiff had complications from a prior in custody surgery and plaintiffs left

18  eye was sunken in, and plaintiffs lower left eye lid had become inverted so as

19  to create irritation, pain, discomfort, and possibly lead to other future serious

20  medical problems, plaintiff was therefore placed among the class of persons to

21  whom defendant officer shah owed a duty as part of a special relationship,

22  527. defendant officer shah was assigned to escort plaintiff in a wheel chair

23  from the jail ward located in the lower level of LCMC aka LAC+USC medical center

24  to the eye clinic located on the 4th floor of the same building, plaintiff was

25  placed in a waist chain and handcuffed, then officer shah began to escort plain

26  tiff to the eye clinic for an appointment with the occular plastics specialist,

27  528. upon arrival to the eye clinic through the rear entrance, plaintiff was

28  wheeled into a waiting area with several people from the public, then

1  defendant officer shah allowed plaintiff to be photographed by a third party,

2  plaintiff did not want to be photographed and objected to being photographed and

3  defendant officer shah did nothing to prevent the third party from photographing

4  plaintiff,

5  529. plaintiff became irritated by this unwelcome and unwanted photographing

6  and made a derogatory comment to the third party person,

7  560. defendant officer shah then asked his parter , another LASD officer to

8  cover for him and watch plaintiff,

9  561. defendant officer shah then went to the nurses station and canceled the

10  plaintiffs appointment with the occular plastics doctors, although plaintiff

11  had not been seen or received treatment from any medical care providers,

12  562. upon belief and information defendant officer shah intentionally canceled

13  plaintiffs appointment to punish plaintiff because defendant officer shah had

14  a resentment toward plaintiff from a previous incident that took place at the

15  eye clinic, for which plaintiff was never punished,

16  563. defendant officer shah had knowledge that plaintiff had a serious medical

17  need, because defendant officer shah's assignment was to escort plaintiff to

18  the eye clinic and allow plaintiff to meet with the occular plastics doctors,

19  therefore, defendant officer shah was deliberately indifferent to plaintiff's

20  serious medical needs,

21  564. defendant officer shah's actions or omissions violated plaintiffs right to

22  be free of cruel and unusual punishment guaranteed by the 8th and 14th amendments

23  to the constitution,

24  565. as a direct and proximate result of defendant officer shah's actions or

25  omissions, described in this complaint, plaintiff was not seen by the occular

26  plastics specialists at LAC+USC medical center and plaintiffs left eye and left

27  eye lid remained untreated until plaintiff went to prison much later on or about

28  02/20/15, plaintiff was forced to suffer pain and discomfort to his left eye,

1  plaintiffs complication from prior surgery went untreated for an extended amount of

2  time and plaintiff suffered as a result of the actions or omissions of defendant

3  officer shah, plaintiff suffered pain, discomfort, and emotional distress in that

4  plaintiffs left eye lid was inverted causing plaintiffs left eye to become irritated

5  and red for continious periods of time, plaintiffs condition never changed and

6  plaintiff was in constant pain, discomfort, and distress as a result of defendant

7  officer shah denying, interfering, and delaying plaintiffs medical care or treatment

8  566. defendant officer shah acted knowingly, willfully, and maliciously, and with a

9  reckless and callous disregard for plaintiffs federally protected rights,

10  567. as a result of defendant officer shah's actions or omissions plaintiff was

11  forced to live without treatment, plaintiff therefore suffered and will continue to

12  suffer extreme hardship and actual and impending irreparable injury, pain, and emoti-

13  onal distress in that plaintiff is still trying to seek treatment and plaintiff has

14  been in a constant state of pain, discomfort, and distress while he has attempted to

15  seek treatment, which has not been easy, plaintiff has had to argue, and appeal

16  several delays, and denials of proper treatment and has been forced to overcome

17  several administative and procedural challenges that continue to pose plaintiff

18  significant hardships and headache, including but not limited to, reading, writing,

19  participation in educational programs, and daily activities that have been a constant

20  source of frustration , pain, irritation, discomfort, and so fourth,

21  THIRTY-FOURTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

22  568. plaintiff incorperates paragraphs 258 through 271

23  569. on or about 04/25/14 plaintiff was in custody at Los Angeles County Jail and or

24  Los Angeles County Medical Center and was an inmate, plaintiff was therefore, placed

25  among the class of persons to whom defendants officer shah, lee baca, terri mcdonald

26  owed a duty as part of a special relationship,

27  570. defendants named SUPRA had a duty to use such skill, prudence, and diligence as

28  other members of his or her profession commonly possess and exercise,

571. defendants named SUPRA negligently denied plaintiff access to medical care
or interfered with medical treatment after it was ordered or caused a delay in
getting medical treatment to plaintiff because defendant officer shah canceled
plaintiffs appointment with the occular plastics specialists who were scheduled
to consult with plaintiff and develop a treatment plan for plaintiffs left eye
and plaintiffs lower left eye lid which both had complications from prior surgery
and both which caused plaintiff substantial pain, discomfort, and irritations,
and which also caused plaintiff to experiance substantial difficulty while per-
forming activities such as reading, writing, and other activities that require
substantial use of his eye's, plaintiff's eyes get tired very quickly and he
also sufferes from double vision quite often,

572. as a direct and proximate result of the negligence of defendants named SUPRA
plaintiff was not treated for his condition prior to being transferred to prison
and plaintiff was denied treatment in prison and plaintiffs treatment was dragged
out and was unnecessarily extended in that plaintiff had to wait approximately
one year before plaintiff began to receive proper treatment for his conditions
on or about 02/20/15, plaintiff began to meet with a occular plastics doctor
at loma linda university medical center, plaintiff therefore, had to suffer with
discomfort and pain and irritation and other side affects from his complications
and was hurt and innjured in his health, strength, and activity, sustaining inj
ury to his nervous system and person, all of which injuries have caused, and
continue to cause plaintiff great mental , physical, and emotinal and nervous
pain and suffering,

573.  defendants named SUPRA acted knowingly, willfully, and maliciously, and
with a reckless and callous disregard for plaintiffs federally protected rights

574. as a result of defendants named SUPRA actions or omissions plaintiff was
forced to live without treatment, plaintiff therefore, suffered and will continue
to suffer extreme hardship and actual and impending irreparable injury, pain,

1   and emotional distress in that plaintiff is still trying to seek treatment and

2   plaintiff has been in constant state of pain, discomfort, and distress while he

3   has attempted to seek treatment, which has not been easy, plaintiff has had to

4   argue, and appeal several delays, and denials of proper treatment and has been

5   forced to overcome several administrative and procedural challenges that continue

6   to pose plaintiff significant hardships and headache, including but not limited

7   to, reading, writing, participation in educational programs, and daily activities

8   that have been a constant source of fustration, pain, irritation, discomfort,

9   and so fourth,

10  THIRTY-FIFTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

11  575. plaintiff incorperates paragraphs 258 through 271

12  576. on or about 04/25/14  plaintiff was an inmate at Los Angeles County Jail or

13  Los Angeles County Medical Center and was in the care of defendant officer shah

14  577. on or about 04/25/14 at the eye clinic located in LAC+USC medical center

15  plaintiff was being escorted to his appointment with the occular plastics speci

16  alists and was schedueled to consult with doctors to begin a treatment plan for

17  plaintiff and plaintiffs left eye and lower left eye lid, both of which had

18  complications from prior surgery,

19  578. defendant officer shah took it upon himself to cancel plaintiffs appointme

20  ent in order to punish plaintiff because defendant officer shah had a resentment

21  towards plaintiff from a prior unrelated incident where plaintiff was accused

22  of stealing a pen that defendant officer shah had found on the floor, plaintiff

23  never had the pen, however, defendant officer shah accused plaintiff of having

24  the pen and canceled plaintiffs appointment on that date also, plaintiff then

25  exchanged words with defendant officer shah and defendant officer shah offered

26  to uncuff plaintiff so that plaintiff and defendant officer shah could fight

27  however, defendant officer shah did not actually remove plaintiffs handcuffs

28  and therefore, had intent to punish plaintiff again while at the eye clinic,

579. defendant officer shahs conduct was intentional and malicious and done for the purpose of causing plaintiff to suffer mental anguish, and emotional and physical pain and distress, defendant officer shah's conduct was done with a wanton and reckless disregard of the consequences to plaintiff,

580. as the proximate result of the acts alleged above, plaintiff suffered and felt, degradation, indignation, frustration, helplessness, anguish, pain and suffering, and mental anguish, and emotional distress and physiacl distress in that plaintiff felt lower in dignity, strong displeasure, dissapointed and thwarted plaintiff felt incapacitated, acute suffering or pain, and was injured in mind and in body,

581. the acts of defendant officer shah alleged above were willfull, wanton, malicious and oppressive and justify the awarding of exemplary and punitive damages,

THIRTY-SIXTH CAUSE OF ACTION FOR INADEQUATE MEDICAL CARE

582. plaintiff incorperates paragraphs 273 through 276

583. on or about 04/29/14 plaintiff was in custody at Los Angeles County Jail and had a serious medical need because plaintiff had complications from prior surgery to his left eye, and left eye lid in which plaintiffs left eye had sunken into the socket and plaintiffs lower left eye lid had become inverted and was causing irritation and pain and discomfort to plaintiffs left eye and could of caused future serious medical problems, plaintiff was therefore, placed among the class of persons to whom defendant nuse practicioner malone owed a duty as part of a special relationship,

584. defendant nurse practicioner malone failed to provide plaintiff with adequate care for his serious medical needs, and on or about 04/29/14 defendant nurse practicioner malone discharged plaintiff from the correctional treatment center area known as 3 west, where plaintiff was under the care of nursing staff and physicians daily 24 hours a day, and was being provided good food and medication

73

585. plaintiff was discharged and placed directly into a mental health housing area, plaintiff was placed into a cell and was not allowed to take any extra items such as clothing or food, plaintiff was not provided with any linens to keep warm and to put on top of the dingy mat on the bed, plaintiffs cell was very dirty with dirt on the walls , floor, and mat, plaintiff could smell urine and saw residue from feces marked on the walls and door,

586. defendant nurse practicioner malone had knowledge of plaintiffs serious medical need because defendant nurse practicioner malone was assigned to care for plaintiff and his medical needs on a daily basis and plaintiff had made defendant nurse practicioner malone aware of his left eye conditions verbally and defendant nurse practicioner malone had examined plaintiff in his cell,

587. defendant nurse practicioner malone also knew that plaintiffs eye had not been treated and that his condition could lead to further serious medical prob lems such as infection, or other complications, yet defendant nurse practicioner malone chose to discharge plaintiff untreated, and into an area that was not fit to accomodate the needs of plaintiff, regarding plaintiffs medical needs,

588. defendant nurse practicioner malone's actions or omissions violated plaint iffs right to be free of cruel and unusual punishment, guaranteed by the 8th and 14th amendments to the constitution,

589. as a direct and proximate result of defendant nurse practicioner malone's actions or omissions described in this complaint, plaintiff was discharged from the correctional treatment center with medical issues unresolved snd untreated and plaintiff was placed into a cell that was not fit to meet the needs of a medical patient, who was at risk of infection and whos treatment plan would be compromised by moving him out of the correctional treatment center, defendant nurse practicioner malone's actions or omissions also caused plaintiff's left eye and left eye lid condition to go untreated, plaintiff was not returned to Los Angeles County Medical center  and plaintiffs condition went unresolved,

1   and plaintiff suffered unnecessary extended pain, suffering, and distress, in

2   that plaintiffs complications from prior surgery to his left eye and lefteye lid

3   went untreated and plaintiff was transferred to state prison , where plaintiff

4   was denied treatment and then plaintiff had to fight for proper and adequate

5   treatment for his complications from prior surgery, plaintiffs treatment was

6   dragged out and unnecessarily extended and plaintiff had to suffer for approxima

7   tely a year to begin receiving treatment for his left eye and left eye lid,

8   as a result of defendant nurse practicioner malone's provision of inadequate

9   medical care,

10   590. defendant nurse practicioner malone acted knowingly, willfully, and malicio

11   ously, and with reckless and callous disregard for plaintiffs federally protected

12   rights,

13   591. as a result of defendant nurse practicioner malone's actions or omissions

14   plaintiff has suffered and will continue to suffer extreme hardship and actual

15   and impending irreparable injury, pain, and emotional distress in that plaintiff

16   had to go untreated with medical needs unresolved and suffer needless pain, and

17   discomfort, and distress while seeking treatment from california department of

18   corrections and rehabilitation and because plaintiff had to wage an on-going

19   battle with doctors and administrators for treatment and all while living with

20   a disability which substantially limits plaintiffs abilitys to read and write,

21   THIRTY SEVENTH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

22   592. plaintiff incorperates paragraphs 273 through 276

23   593. on or about 04/29/14 plaintiff was in custody at Los Angeles County Jail and

24   was an inmate, plaintiff was therefore, placed among the class of persons to whom

25   defendants nurse paracticioner malone, lee baca, david fender, kelley fraser, ray

26   leyva, ralph ornelas, karen dalton, kevin kuykendall owed a duty  as part of a

27   special relationship,

28

594. defendants named SUPRA had a duty to use such skill, prudence, and dilige-
nce as other members of his or her profession commonly possess and exercise,

595. defendants named SUPRA negligently discharged plaintiff from the correc-
tional treatment center living area while plaintiff's medical needs were
unresolved and plaintiff was still at risk of future serious medical issues
when defendants named SUPRA discharged him and he was moved to a mantal health
cell in another housing area, where the living conditions did not meet the
needs of plaintiff and plaintiff ended up getting an infection, moreover,
defendants named SUPRA negligently failed to provide plaintiff with medical
care for a known serious medical need, plaintiff had complications from a prior
surgery to his left eye and left eye lid, which caused his left eye to become
irritated and caused pain and discomfort, defendants named SUPRA caused plaint
iff to not receive proper or adequate care for his condition prior to his
discharge from the correctional treatment center and prior to plaintiffs
in custody transfer to state prison, therefore plaintiff nedlessly suffered
unecessary pain, discomfort, irritation, to his left eye, and caused distress

596. as a direct and proximate result of the negligence of defendants named
SUPRA plaintiffs serious medical needs went untreated and unresolved and
plaintiff was transferred to state prison where plaintiff would be denied
treatment and then treatment would be unnecessarily be dragged out for about
one year, meanwhile plaintiff suffered pain, discomfort, irritation, and
distress, all while living with a disability which substantially limits
plaintiffs ability to read or write and perform other tasks that involve
eye use and extended eye use,

597. defendants named SUPRA acted negligently, willfully, and maliciously
and with reckless and callous disregard for plaintiffs federally protected
rights,

1   598. as a result of defendants named SUPRA actions or omissions plaintiff has

2   suffered and will continue to suffer extreme hardship and actual and impending

3   irreparable injury, pain, and emotional distress in that plaintiff had to

4   go untreated with medical needs unresolved and suffer needless pain, and

5   discomfort, and distress while seeking treatment from california department

6   of corrections and rehabilitation and because plaintiff had to wage ongoing

7   battle with doctors and administrators for treatment and all while living with

8   a disability which substantially limits plaintiffs abiltys to read and write,

9   THIRTY-EIGHTH CAUSE OF ACTION FOR INADEQUATE MEDICAL CARE

10  599. plaintiff incorperates paragraphs 274 through 283

11  600. on or about 05/02/14 through  05/07/14 plaintiff was in custody at Los

12  Angeles County Jail and had a serious medical need because plaintiff had

13  complications from prior surgery to his left eye, and left eye lid in which

14  plaintiffs left eye had sunken in and his left eye lid had inverted and was

15  causing irritation and pain and discomfort to plaintiffs left eye and could

16  of caused future serious medical problems, plaintiff was therefore, placed amo

17  ng the class of persons to whom defendant docotr doe 52 owed a duty as part

18  of a special relationship,

19  601. defendant docotor doe 52 failed to provide plaintiff with adequate care

20  for his serious medical needs, and plaintiff had developed an infoection from

21  the unclean cell in which he was required to live in, then plaintiff held

22  several conversations with nurses who would come to his cell to administer

23  his medications, plaintiff requested that someone check on his appointment with

24  the occular plastics doctors at LCMC aka LAC+USC medical center,  plaintiff

25  was told that his request would be passed on to his primary care provider

26  defendant doctor doe 52, but plaintiff was not informed about his upcomming

27  treatment, plaintiff explained to his nurses that he required another surgery

28  to correct his left eye, and left eye lid, but nobody would listen to plaintiff

602. defendant doctor doe 52 had knowledge of plaintiffs serious medical need because defendant doctor doe 52 was plaintiffs primary care provider and was assigned to administer medication to plaintiff therefore, defendant docootor doe 52 had to review plaintiffs medical file and medical history, and then review the future or upcomming events schedueled for plaintiff, therefore, defendant docootor doe 52 was deliberately indifferent to plaintiffs serious medical needs

603. defendant docootor doe 52's actions or omissions violated plaintiffs right to be free of cruel and unusual punishment, guaranteed by the 8th and 14th amendments to the constitution,

604. as a direct and proximate result of defendant docotr doe 52's actions or omissions, described in this complaint, plaintiff was in custody transferred to state prison without medical care being provided to plaintiff for his serious medical needs, specifically his left eye and left eye lid, and plaintiff suffered pain, discomfort,  and emotional distress in that plaintiff was forced to live with his medical condition unresolved, and plaintiff had to try and seek treatment in state prison which was tedious because plaintiff was denied treatment, then plaintiff had to agrue and appeal with his doctors and administrators about the treatment he needed, finally after approximately one year plaintiff began to receive treatment for his serious medical needs, and suffered extended and unnecessary pain, discomfort, irritation, and distres as a result of defendant doctor doe 52's provision of inadequate medical care,

605. defendant docootor doe 52 acted knowingly, willfully, and malicously and with reckless and callous disregard for plaintiffs federally protected rights

606. as a result of defendant doctor doe 52's actions or omissions, plaintiff has suffered and continue to suffer extreme hardship and actual and impending irreparable injury, pain, and emotional distress in that plaintiff suffered extended headache, aggrivation and frustration from trying to resolve his serious medical needs all while living in pain and discomfort and irritation,

1  THIRTY-NINETH CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE

2  607. plaintiff incorporates paragraphs 274 through 283

3  608. on or about 05/02/14 through 05/07/14 plaintiff was in custody at Los

4  Angeles County Jail and was an inmate, plaintiff was therefore, placed among

5  the class of persons to whom defendants doctor doe 52, lee baca, david fender,

6  kelley fraser, ray leyva, ralph ornelas, karen dalton, kevin kuykendall owed

7  a duty as part of a special relationship,

8  609. defendants named SUPRA had a duty to use such skill , prudence, and

9  diligence as other members of his or her profession commonly possess and

10  exercise,

11  610. defendants named SUPRA negligently failed to provide medical care to

12  plaintiff for his serious medical needs, specifically his left eye and left

13  eye lid which both had suffered complications from prior surgery and therefore

14  caused plaintiff to be in pain, discomfort, irritation, and distress,

15  plaintiff needed to meet with a occular plastics specialist and plaintiff

16  never got to meet with any specialist to resolve or treat his complications,

17  defendants named SUPRA negligently failed to make sure plaintiff received

18  his medical care prior to plaintiff being transferred to state prison on or

19  about 05/08/14, moreover, defendants named SUPRA  negligently reviewed plain

20  tiffs medical file and had an opportunity to make the necessary adjustments

21  and allow plaintiff to receive medical care properly and promptly, defendants

22  named SUPRA failed to take the steps necessary to provide plaintiff treatment

23  for his serious medical needs prior to plaintiffs in custody transfer to

24  state prison, so as to cause the injuries and damages described below,

25  611. as a direct and proximate result of the negligence of defendants named

26  SUPRA, plaintiff was not provided with the medical care or treatment he needed

27  to begin a treatment plan for his left eye and left eye lid, which was in a

28  state of constant irritation, pain and discomfort, and caused distress,

612. plaintiff was hurt and injured in his health, strength, and activity, sustaining injury to his nervous system and person, all of which injuries have caused and continue to cause plaintiff great mental, physical, emotional, and nervous pain and suffering,

613. defendants named SUPRA acted negligently, willfully, and maliciously and with reckless and callous disregard for plaintiffs federally protected rights,

614. as a result of defendants named SUPRA actions or omissions, plaintiff has suffered and continues to suffer extreme hardship and actual and impending irreparable injury, pain, and emotional distress in that plaintiff suffered extended headache, aggrivation and fustration from trying to resolve his serious medical needs all while lining in pain and discomfort and irritation,

FOURTIETH CAUSE OF ACTION FOR DENIAL OF DUE PROCESS

615. plaintiff incorperates paragraphs 39 through 84

616. on or about 02/12/13 through 02/21/13 plaintiff was deprived of liberty without due process of law

617. defendants Los Angeles County, Lee Baca, Paul Tanka, Terri Mcdonald, officers doe 2 through doe 7, and officer ortiz are responsible of liable for establishing or maintining a policy or custom, or commiting actions that violate plaintiffs right to due process under the dur process clause of the 14th amendment,

618. on or about 02/12/13 plaintiff was placed in a disciplinary cell in the disciplinary area also known as 900 max located at NCCF,

619. plaintiff did not receive notice of charges, plaintiff was not allowed to be heard on matters surrounding the circumstances that placed plaintiff into a state of disciplinary action, plaintiff did not receive a hearing and plaintiff was placed into a disciplinary cell on or about 02/12/13

620. plaintiff claims that his liberty was interfered with by the defendants named SUPRA ,

621. plaintiff claims that he was innocent of any wrong and therefore, had he been given due process of law would not have been placed into a disciplinary cell,

623. plaintiff argues that the procedures attendant upon his deprivation of liberty are  not constitutionally sufficent and do not meet the requirement of the due process clause of the 14th amendment,

624. plaintiff claims that defendants named SUPRA and the official policys or customs in which they uphold and carry out are negligent in structure and purpose, and do not sufficently constitute due process,

625. plaintiff also claims that defendants officer ortiz and officer doe 2 through doe 7 acted with the intent to deprive plaintiffs liberty intentionally

626. plaintiff claims that defendants named in paragraph 617. took plaintffs liberty away arbitrarily and without good cause, or without procedure,

627. plaintiff has the right to process that is due and the right to notice, and an opportunity to be heard at a meaningful time and in a meaningful manner,

628. plaintiffs deprivation was very serious because not only was plaintiff deprived of his liberty, but plaintiff was subjected to substantial risk of serious harm, because plaintiff was placed into a cell with a known violent inmate, then plaintiff was attacked by the inmate in his cell and plaintiff was seriously injured in his eye's and face, causing injury, pain, and distress

629. plaintiff claims that additional procedures are required to deprive inmates of liberty, it is too easy for officials to manipulate the factors that surround inmates being deprived of liberty, and why they are deprived, this is relevant in plaintiffs circumstances because although plaintiff lacks direct evidence to support his claim, plaintiff maintians that he was innocent and that the entire situation was a concoction of defendant officer ortiz's

630. plaintiff claims that additional procedures would be a great help to

the interests of justice, because there are no administration officials

involved or members of the court to supervise or make sure that justice

is handed down and conducted in a lawful yet constitutional manner, and

the fact that officials are both sworn to uphold the law yet also practice

in acts that are below the treshhold of procedural conduct and also practice

in "the code of silence" type of events, plaintiff claims that new and

proper procedures are in order for Los Angeles County Jail and inmates,

631. plaintiff also claims that officials who must carry out such procedures

would not be unduly burdened by proper procedures that reflect due process

because , thousands of penal institutions across the united states have

complied with the due process requirement and so should Los Angeles County

Jail and its officers and final policy makers,

632. plaintiff also claims that the california constitution also creates

a statutorily created liberty interest towards plaintiffs due process rights

633. plaintiff claims that the due process clause also forbids punishment

on pre trial detainees before they have been found guilty of crimes, this

is also true in plaintiffs circumstances because plaintiff was not convicted

634. plaintiff maintians that defendants named in paragraph 617 are in

violation of plaintiffs procedural due process rights under the due process

clause of the 14th amendment,

FORTY-FIRST CAUSE OF ACTION FOR DELIBERATE INDIFFERENT POLICYS OR CUSTOM

635. on or about 02/01/13 through 03/02/13 and on or about 03/10/13 through

04/02/13 and on or about 05/13/13 through 05/08/14 plaintiff was in custody

at Los Angeles County Jail and was an inmate, plaintiff was therefore, sub-

jected to the policys, customs, and practices or policy statement, ordinance,

regulations or decisions officialy adopted and promulgated by Los Angeles

County et.al. , Los Angeles County Sheriffs Department, Lee Baca, Paul Tanaka,

1   and terri mcdonald,

2   636. or subjected to actions which had not received formal approval through

3   the bodys of Los Angeles County et.al. , Los Angeles County Sheriffs Department

4   official decision making channels,

5   and actions that were persistent, wide spread or permanent and well settled

6   practices, or edicts and acts of subordinate officials whos conduct could

7   fairly be said to represent official policy, or municipal inaction,

8   637. on or about 02/12/13 through 02/14/13 , and 06/15/13 , and 12/25/13

9   through 12/31/13 plaintiff was subjected to policy or custom or municipal

10  inaction that allowed inmates to exercise too much control over other inmates

11  and exercise too much control over the communications processes between inmates

12  and jail officials, causing a state of nature where inmates were mistreated

13  and subjected to abuses and often submitted to violence at the hands of other

14  inmates, therefore causing substantial risk of serious harm to plaintiff and

15  violating plaintiffs right to be free from cruel and unusual punishment,

16  638. on or about 02/02/13 through 03/02/13 and 05/13/13 through 05/08/14,

17  plaintiff was subjected to policy custom or municipal inaction which allowed

18  inmates to live in dorms and inmate living areas that were over crowded or

19  at max capacity or above max capacity, therefore causing excessive substantial

20  risk of serious harm to plaintiff and violating plaintiffs right to be free

21  of cruel and unusual punishment,

22  639. on or about 12/15/13 through 12/31/13 plaintiff was subjected to policy,

23  custom, or municipal inaction which allowed inmates to live in dorms and inmate

24  living areas that contain hidden areas or blind spots which caused excessive

25  substantial risk of serious harm to plaintiff, and violated plaintiffs right

26  to be free of cruel and unusual punishment,

27

28

640. on or about 02/14/13 and 06/15/13 and 12/31/13, plaintiff was subjected to policy, custom or municipal inaction which prevented officials use of and implementation of surveilance equiptment to monitor inmate living areas for safety and inbmate activity, therefore causing substantial risk of serious harm to plaintiff, and violating plaintiffs right to be free of cruel and unusual punishment,

641. on or about 12/25/13 through 12/31/13 plaintiff was subjected to policy custom or municipal inaction which allowed contraband and contraband materials to enter and be present inside inmate living areas, and to be used for the purposes of creating home made wine aka pruno or alcohol, therefore causing substantial risks of serious harm to plaintiff, and violating plaintiffs right to be free of cruel and unusual punishment,

642. on or about 02/12/13 through 02/28/13 plaintiff was subjected to policy custom of municipal inaction which allowed officials to place plaintiff into punitive or segregation units or cells without due process of law, therefore causing plaintiff to be exposed to substantial risks of serious harm, and to unjustly or wrongly place plaintiff into unjustified and unnecessary disciplina action, and also violating plaintiffs rights to due process under the due proce clause, and plaintiffs right to be free of cruel and unusual punishment,

643. on or about 12/15/13 t6hrough 12/31/13 plaintiff was subjected to policy custom, or municipal inaction because plaintiff was placed into a living area with anti semetic gang members who were dangerous and later targeted plaintiff due to a failure to establish and carry out adequate classification policy prior to placement of inmates into living areas, specifically validating gang members and segregation of gang rivals or potential target groups, therefore causing substantial risk of serious harm to plaintiff and violating plaintiffs right to be free of cruel and unusual punishment,

644. on or about 02/02/13 through 03/02/13 and 03/10/13 through 04/02/13 and 05/13/13 through 05/08/14, plaintiff was subjected to policy custom or municipa inaction because Los Angeles County Jail was often not staffed with sufficent custody officials to properly monitor inmate safety and maintian order, therefore, causing substantial risk of serious harm to plaintiff and violating plaintiffs right to be free of cruel and unusual punishment,

645. on or about 02/14/13 and 06/15/13 and 12/31/13, plaintiff was subjected to policy custom or municipal inaction because Los Angeles County Jail official failed to conduct sufficent safety checks or in person inspections of inmate living areas, creating substantial risks of serious harm to plaintiff and violating plaintiffs right to be free of cruel and unusual punishment,

646. on or about 02/14/13 and 06/15/13 and 12/31/13, plaintiff was subjected to policy custom or municipal inaction because Los Angeles County Jail official failed to use and implement resources and tactics already in place to prevent contraband, therefore causing substantial risk of serious harm to plaintiff and violating plaintiffs right to be free of cruel and unusual punishment,

647. on or about 02/14/13 and 06/15/13 and 12/31/13, plaintiff was subjected to policy custom or municipal inaction because Los Angeles County Jail official failed to use and implement training, resources, and tactics in place to prevent violence between inmates, therefore causing substantial risk of serious harm to plaintiff, and violating plaintiffs right to be free of cruel and unusual punishment,

648. on or about 03/02/13 and 04/02/13 plaintiff was subjected to policy custom or municipal inaction because Los Angeles County Jail Custody Officials failed to offer or make known sufficient information about post release assistance for indigent inmates such as plaintiff, causung plaintiff unnecessary hardship and extreme distress and frustration, and violating plaintiffs right to be free of cruel and unusual punishment,

1   649. the policys or customs or municipal inactions of defendants Los Angeles

2   County et.al. , Los Angeles County Sheriffs Department, Lee Baca, Paul Tanaka,

3   and Terri McDonald, described in this complaint amounted to deliberate

4   indifference to the rights of inmates such as plaintiff who are help in

5   Los Angeles County Jail under due process of law,

6   650. as a direct and proximate result of the customs or practices, and policys

7   of defendants , Los Angeles County et.al. , Los Angeles County Sheriffs

8   Department, Lee Baca, Paul Tanaka, and Terri McDonald, described in this

9   complaint plaintiffs rights were violated and plaintiff was exposed to several

10  unnecessary substantial risks of serious harm, and plaintiff was injured on

11  or about 02/14/13 and 06/15/13 and 12/31/13 in that plaintiff suffered injury

12  , loss, and damages including several surgerys and loss of liberty and emoti-

13  onal distress and pain and suffering,

14  FOURTY-SECOND CAUSE OF ACTION FOR DELIBERATELY INDIFFERENT POLICYS OR CUSTOMS

15  651. on or about 02/01/13 through 03/02/13 and on or about 03/10/13 through

16  04/02/13 and on or about 05/13/13 through 05/08/14 plaintiff was in custody

17  at Los Angeles County Jail and regularly interacted with medical personel

18  who are employed by and under the authority of Los Angeles County Medical

19  Services Bureau and plaintiff was therefore subjected to the policys, customs,

20  and practices or policy statement, ordinance, regulations, or decisions

21  officialy adopted and promulgated by Los Angeles County et al. , Los Angeles

22  County Sheriffs Department, Los Angeles County Medical Services Bureau,

23  Lee Baca, terri mcdonald, david fender, kelley fraser, ray leyva, ralph ornelas

24  , karen dalton, kevin kuykendall, paul tanaka,

25  652. or subjected to action which had not received formal approval through

26  the bodys of Los Angeles County et.al. , Los Angeles County Sheriffs Department

27  , and Los Angeles County Medical Services Bureau official decision making

28  channels,

653. and actions that were wide spread or permanent and well settled practices

or edicts and acts of subordinate officials whos conduct could fairly be

said to represent official policy, or municipal inaction,

654. on or about 02/12/13 through 03/02/13 and 03/10/13 through 04/02/13 and

05/13/13 through 05/08/14 plaintiff was subjected to policy or custom or

municipal inaction that failed to provide inmates such as plaintiff with

adequate screening for medical issues and or disabilities during intake to

a housing unit or a correctional facility or during trnsfer from one unit

or correctional facility to another, and upon release from jail, causing

plaintiff to be improperly classified or the needs of plaintiff to not be met

by the unit or facilitys available accomodations or resources, and therefore

violating plaintiffs right to adequate and proper medical care and plaintiffs

right to be free from cruel and unusual punishment,

655. on or about 02/12/13 through 03/02/13 and 03/10/13 through 04/02/13

and 05/13/13 through 05/08/14 plaintiff was subjected to policy or custom or

municipal inaction that failed to provide inmates who have disabilities that

substantially limit one or more functions of their bodys from receiving and

using equiptment, auxillary aids and assistive devices which are designed to

provide necessary assistance to inmates such as plaintiff, and failing to

accomodate inmates with similar disabilities with accomodations and services

that would provide assistance to inmates with disabilities and help them

meet the daily living needs that they require or the basic human needs and

functions that are necessary for life, and therefore violated plaintiffs right

to adequate and proper medical care, and plaint6iffs right to be free from

cruel and unusual punishment,

656. on or about 02/02/13 through 03/02/13 and 03/10/13 through 04/02/13 and

05/13/13 through 05/08/14 plaintiff was subjected to policy or custom or

municipal inaction which forced inmates with disabilities to be transferred

1  to other units and correctional facilities that do not have sufficent support

2  or resources available to accomodate persons with disabilities or special

3  needs such as plaintiff, therefore plaintiffs right to adequate and proper

4  medical care was violated, and plaintiffs right to be free of cruel and

5  unusual punishment,

6  657. on or about 02/02/13 through 03/02/13 and 03/10/13 through 04/02/13 and

7  05/13/13 through 05/08/14 plaintiff was subjected to policy or custom or

8  municipal inaction because plaintiff was denied perscription glasses that

9  he required for his vision impairment disability, and which he required to

10 perform his basic and daily living needs, therefore plaintiffs right to

11 adequate and proper medical care was violated and plaintiffs right to be

12 free from cruel and unusual punishment was violated,

13 658. on or about 02/02/13 through 03/02/13 and 03/10/13 through 04/02/13

14 and 05/13/13 through 05/08/14 plaintiff was subjected to policy and custom

15 or municipal inaction that failed to establish and maintain an adequate

16 classification policy with sufficient objective criteria to accomodate the

17 needs of the various types of inmates that are held in Los Angeles County Jail

18 and to seek out those inmates who require special accomodations to assist them

19 with a disability which substantially limits one or more functions of their

20 mind or body, then provide adequate services and accomodations to those inmates

21 on a daily basis, therefore plaintiffs right to adequate and proper medical

22 care was violated and plaintiffs right to be free from cruel and unusual

23 punishment,

24 659. on or about 02/02/13 through 03/02/13 and 03/10/13 through 04/02/13 and

25 05/13/13 through 05/08/14 plaintiff was subjected to policy or custom or

26 municipal inaction that demonstrated that Los Angeles County Jail Custody

27 Officials did not receive adequate training to deal with the needs and daily

28 issues of inmates with disabilities or inmates who suffer from impairments,

1    therefore, plaintiffs right to adequate and proper medical care was violated

2    and plaintiffs right to equal protection of the law was violated and plaintiffs

3    right to be free of cruel and unusual punishment was violated,

4    660. on or about 02/02/13 through 03/02/13 and 03/10/13 through 04/02/13 and

5    05/13/13 through 05/08/14 plaintiff was subjected to policy custom or municipal

6    inaction that demonstrated that Los Angeles County Jail Custody Officials

7    did not receive adequate training to properly observe inmate activity and

8    safety or maintain order in inmate living areas , therefore violating

9    plaintiffs right to equal protection of the law and plaintiffs right to be

10   free of cruel and unusual punishment,

11   661. on or about 02/02/13 through 03/02/13 and 03/10/13 through 04/02/13 and

12   05/13/13 through 05/08/14 plaintiff was subjected to policy or custom or

13   municipal inaction that demonstrated that Los Angeles County Jail Custody

14   Officials did not receive adequate training  to properly abate and prevent

15   substantial risks of serious harm to inmates such as plaintiff, and therefore

16   violated plaintiffs right to equal protection of the law and plaintiffs right

17   to be free of cruel and unusual punishment,

18   662. the policys or customs or municipal inactions of defendants Los Angeles

19   County et.al. , Los Angeles County Sheriffs Department, Los Angeles County

20   Medical Services Bureau, Lee Baca, Terri McDonald, david fender, kelley fraser

21   , ray leyva, ralph ornelas, karen dalton, kevin kuykendall, paul tanaka,

22   described in this complaint amounted to deliberate indifference to the rights

23   of inmates such as plaintiff who are held in Los Angeles County Jail under due

24   process of law,

25   663. as a direct and proximate result of the customs or practices and policys

26   of defendants, Los Angeles County et.al. , Los Angeles County Sheriffs Depart-

27   ment, Los Angeles County Medical Services Bureau, Lee Baca, Terri McDonald,

28   David Fender, Kelley Fraser, Ray Leyva, Ralph Ornelas, Karen Dalton,

1  kevin kuykendall, paul tanaka, described in this complaint, plaintiffs

2  rights were violated and plaintiff was exposed to several unnecessary

3  substantial risks of serious harm, then plaintiff was injured on or about

4  02/14/13 and 06/15/13 and 12/31/13, in that plaintiff suffered injury, pain,

5  loss, and emotional distress including damages and surgerys and pain and

6  suffering,

7  VI. DAMAGES

8  664. on or about 02/14/13 plaintiff sustained injuries and injury to his

9  eyes, plaintiff is informed and believes that this injury caused plaintiffs

10  right eye to suffer a detatched retina, plaintiff also suffered pain and

11  suffering, and mental and emotional suffering,

12  665. on or about 06/15/13 plaintiff sustained injuries and injury to his left

13  eye, plaintiff is informed and believes that this injury caused plaintiffs

14  left eye to suffer a large hole, and a detatched retina, and pain and suffering

15  and mental and emotional distress,

16  666. on or about 06/25/13 plaintiff required surgery to his left eye to repair

17  the hole in his left eye and to repair detatched retina, and causing plaintiff

18  loss of visual acuety, flashing or flickering of areas in the field of vision,

19  distorted areas in the field of vision, dark spots, dark lines, extreme sen-

20  sitivity to light, eye watering, temporary loss of vision, eye spazums,

21  temporary dizzyness, and difficulty reading,

22  667. on or about 10/13/13 plaintiff required surgery to his right eye to

23  repair detatched retina, and causing plaintiff loss of visual acuety, flashing

24  or flickering areas in the field of vision, distorted areas in the field of

25  vision, dark spots, dark lines, extreme sensitivity to light, eye watering,

26  temporary loss of vision, eye spazums, temporary dizzyness, and difficulty

27  reading,

28

668. on or about 12/31/13 plaintiff sustained injuries and injury to his right eye, left eye socket, left cheek bone, nose and mind, causing plaintiffs right eye to suffer detatched retina and perforated areas in his right eye, and plaintiffs left eye socket to be broken, plaintiffs left cheek bone to be fractured in three places, plaintiffs nose to be broken, and several psychologica disorders described below, causing plaintiff pain and suffering and mental and emotional distress,

669. on or about 01/08/14 plaintiff required surgery to his right eye to repair holes or perforated areas inside plaintiffs right eye that were causing retinal detatchment, and causing loss of visual acuety, distorted areas in the field of vision, dark spots, dark lines, difficulty reading,

670. on or about 01/15/14 plaintiff required surgery to his left eye socket, and left cheek bone to repair plaintiffs left orbit and shelf and repair three facial fractures to plaintiffs left cheek bone, causing plaintiff loss of sensation to his left cheek area, left upper lip, front left teeth, partial loss of plaintiffs ability to smile on the left side of his face, and also causing several complications to plaintiffs left eye from this surgery because plaintiffs left eye sank into the socket and plaintiffs lower left eye lid inverted causing pain, discomfort, and double vision,

671. on or about 03/20/15 plaintiff required surgery to his left eye to repair an area inside his left eye that could lead to retinal detatchment in the future, and causing plaintiff loss of visual acuety, distorted areas in the field of vision, dark spots, dark lines, difficulty reading,

672. on or about 03/30/15 plaintiff required surgery on his left eye lid, in an attept to repair plaintiffs inverted lower left eyelid doctors grafted skin from plaintiffs mouth to his lower left eye lid, plaintiffs left eye was stitched closed for approximately 10 days while the skin healed, unfortunatly plaintiffs lower left eye lid inverted shortly after this surgery,

1   673. plaintiff is still consulting with doctors who have discussed a treatment

2   plan with plaintiff that consists of approximately 3 to 4 more surgerys,

3   674. plaintiff will incur substantial medical expenses for the remainder of

4   his lifetime,

5   675. plaintiff has developed mental health issues and disorders due to the

6   incidents described in this complaint, which include but are not limited to:

7   post tramatic stress disorder, night terrors, flashbacks, panic attacks,

8   insomnia, constant fear, fear of people, fear of places, antisocial behavior

9   , anxiety attacks, extreme depression, heart palputations, emotional outbursts

10  mood swings, anger, ADHD, memory loss, obsesive compulsive disorder,

11  plaintiff will incur substantial mental health expenses for the remainder of

12  his lifetime,

13  676. plaintiff will require future in home care to assist plaintiff with

14  cleaning and food preparation, and various tasks that involve keen sight,

15  677. plaintiff has lost future potential earning capacity and future potential

16  income

17  678. plaintiff has lost substantial ability to enjoy lifes pleasures and

18  activities, or hobbys and entertainment that require keen sight,

19  679. plaintiff has been tramatized by the events described in this complaint

20  and will suffer substantial future pain and suffering and mental pain and

21  suffering,

22  680. plaintiff is disabled with permanent vision impairment and limited in

23  his abilities for the remainder of his lifetime,

24  VII. PRAYER FOR RELIEF

25  681. plaintiff has no plain or adequate of complete remedy at law to redress

26  the wrongs described in this complaint, plaintiff has been and will continue

27  to be irreparably injured by the conduct of defendants unless this court

28  grants declatory and injuctive relief and other such relief plaintiff seeks,

92

1   682. WHEREFORE, plaintiff respectfully prays that this court enter judgment
2   granting plaintiff:
3   683. a declaration that the acts and omissions described herein violated
4   plaintiffs rights under the constituion and laws of the united states and
5   the constitution and laws of California,
6   684. a preliminary and permanent injunction ordering defendants,
7   Los Angeles County et.al. , Los Angeles County Sheriffs Department,
8   Los Angeles County Medical Services Bureau, Lee Baca, Terri McDonald,
9   David Fender, Kelley Fraser, Ray Leyva, Ralph Ornelas, Karen Dalton,
10  Kevin Kuykendall, and Paul Tanaka to:
11  (1) restructure the Los Angeles County Jail classification system to
12  incorporate additional objective criteria that will allow officials to better
13  provide medical care, assistance for disabilities, mental health care, and
14  rehabilitation, and also reduce unnecessary violence among inmates who are
15  either prone to violence or vulnerable to violence, (2) develop better methods
16  that allow officials to provide assistance to inmate with disabilities, by
17  creating new forms of administration over treatment, equiptment, issues,
18  after care, and assistance to inmates who have legitimate disabilities which
19  substantially limit one or more functions of their body, or greatly impose
20  significant hardships on inmates basic daily living needs,  (3) develop better
21  methods of implementing additional adequate and proper procedures to screen
22  inmates for known or unknown medical issues upon intake, upon transition
23  from unit to unit or facility to facility and prior to release, and therefore
24  create a system that allows officials to provide adequate and proper medical
25  care for serious medical needs before inmates are forced to suffer unnecess-
26  ary wanton pain or suffering, for various periods of time that may or may not
27  prevent or deter inmates from recieveing proper medical care prior to release,
28

1  (4) develop and implement methods of evaluation of the risks posed to inmates

2  , and the types of dangers inmates may face while incarcerated, then implement

3  strategy that is based on personality, past history of violence, past history

4  of gang activity, vulnerability, dorm or cell living compatability, and basic

5  understanding of jail life conditions and expectations upon intake and placemen

6  into inmate living areas, therefore assisting the classification process to

7  reduce unnecessary violence and unnecessary substantial risks of serious harm

8  (5) develop and implement a tracking and managment sytem for gangs and gang

9  members who are incarcerated in Los Angeles County Jail, then establish a

10  risk management system that identifies particular problematic issues or target

11  groups for each gang affiliation or belief system, therefore, reducing the

12  amount of gang related violence or victims of gang related abuse, and also

13  reducing the amount of control inmates can exercise over other inmates,

14  (6) develop and implement closed circuit surveilance equpitment and methods

15  to observe inmate living areas for inmate activity and safety, therefore

16  eliminating places that have blind spots or hidden areas in which acts of

17  violence often occur at the hands of inmates with evil or sadistic intent,

18  (7) develop and implement strategy and tactics that prevent or reduce inmates

19  control over other inmates, and inmates control over communications with

20  officials, therefore reducing the risks presented to inmates and also taking

21  back control of Los Angeles County Jail from inmates and giving control to

22  officials who are the true authority and safekeepers of the jail, (8) begin

23  a program that provides inmates with an easy to use process that allows inmate

24  to request and obtain equpitment of devices that assist inmates with disabili-

25  ties, such as glasses, hearing aids, walkers, canes, etc.. within a resonable

26  amount of time or prior to release back into society , therefore improving

27  the quality of life for inmates with disabilities and also meeting the

28  minimum standards established by the constituion and the ADA act ,

1   (9) develop and implement pro-active information awareness methods that will

2   allow inmates to enroll or participate in programs that rehabilitate, and pro-

3   vide assistance to inmates upon release and that may improve the quality of life

4   of an inmate who is re-entering society, therefore detering inmates from

5   commiting crimes to survive and spreading awareness that there are programs

6   that support inmates and that methods of assistance are available to inmates,

7   both while incarcerated and post release programs and services, therefore get-

8   ting to the root of the problem that each inmate faces when indigent and unable

9   to find methods of assitance on his own, and providing one on one assistance

10  to a variety of languages, races, religious, ethnic back grounds and and

11  reconnecting them back to society or out reach programs and services  that

12  will help to reduce crime and prevent inmates from becoming helpless and des-

13  perate such as plaintiff, (10) develop and implement strategy and administrat-

14  ive management techniques to control items that can be used to create alcohol

15  or be used as paraphenalia of drugs, and prevent such items from entering

16  inmate living areas, such as plaintiffs, therefore reducing unnecessary violence

17  among inmates, and substantial risks of serious harm to inmates, such as plai-

18  ntiff, and develop additional tactics and strategys to eliminate contraband,

19  685. award plaintiff the following compensatory damages against all defendants

20  jointly and severally, as follows,

21   as to past and future injuries plaintiff asks $10,000,000

22  as to past and future medical and mental care $5,000,000

23  as to past and future physical,mental,and emotional pain and suffering 8,000,000

24  as to future in home care and assistance 2,000,000

25  as to lost earning capacity and lost futur income $10,000,000

26  as to loss of enjoyment of lifes activties 5,000,000

27  as to  permanent disability of vision impairment $10,000,000

28  as to punitive and exemplary damages $1,000,000

1    plaintiff requests nominal damages in an unknown amount,

2    for a combined total of damages of approximately, $51,000,000 total.

3    686. plaintiff requests a jury trial for all matters triable by jury

4    687. plaintiff requests his costs and expenses in suit,

5    688. plaintiff requests reasonable attorney fees in suit,

6    689. plaintiff declines consent to magistrate judge jurisdiction,

7    690. plaintiff requests any additional relief this court deems just, proper,

8    and equitable

9    RESPECTFULLY SUBMITTED,

10   DANIEL COHEN AT4058
     CALIFORNIA INSTITUTION FOR MEN

11   PO BOX 600
     CHINO, CALIFORNIA 91708-0600

12

13                          VERIFICATION

14    I have read the foregoing complaint with the assistance of a third party

15   to help me read and type this complaint, I hereby verify that the matters

16   alleged therein are true, except as to those matters alleged on belief and

17   information, and as to those, I believe them to be true, I certify under

18   penalty of perjury that the foregoing is true and correct.

19

20   DATED  this 8th day of May, 2015

21

22   

23

24

25

26

27

28



